| | |
|---|---|
| 1 | **AKIN GUMP STRAUSS HAUER & FELD LLP** |
| | GREGORY W. KNOPP (SBN 237615) |
| 2 | JONATHAN S. CHRISTIE (SBN 294446) |
| | VICTOR A. SALCEDO (SBN 317910) |
| 3 | 1999 Avenue of the Stars, Suite 600 |
| | Los Angeles, CA 90067-6022 |
| 4 | Telephone:  310.229.1000 |
| | Facsimile:   310.229.1001 |
| 5 | gknopp@akingump.com |
| | christiej@akingump.com |
| 6 | vsalcedo@akingump.com |
| 7 | Attorneys for Defendant, |
| | Tapestry, Inc. |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN ORNELAS, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiffs, | **CLASS ACTION** |
| v. | **DEFENDANT'S NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. §§ 1332(D), 1441, 1446, AND 1453** |
| TAPESTRY, INC., a Maryland Corporation; and DOES 1 through 25, inclusive, | [Civil Cover Sheet, Declarations of Jonathan Christie and Ben Shea, Certification of Interested Entities or Persons and Corporate Disclosure Statement, Notice of Pendency of Other Actions, and Certificate of Service filed concurrently] |
| Defendants. | |
| | Date Action Filed: September 4, 2018 |
| | (*Alameda County Superior Court, Case No. RG18920047*) |

TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA:

PLEASE TAKE NOTICE that Defendant Tapestry, Inc. ("Tapestry" or "Defendant") hereby removes to this Court the state court action described below, pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453. In support thereof, Defendant states as follows:

1. On September 4, 2018, a putative class action was commenced and is currently pending against Defendant in the Superior Court of California, County of Alameda, as Case No. RG18920047, entitled *John Ornelas, Plaintiff v. Tapestry, Inc., Defendant*. *See* Declaration of Jonathan Christie in Support of Defendants' Notice of Removal ("Christie Decl.") ¶ 2. Attached **as Exhibit A** to the Christie Declaration are copies of the Summons, Complaint, Civil Case Cover Sheet, and Proof of Service of Summons. *See* Christie Decl. ¶ 2, Ex. A. Attached as **Exhibit C** to the Christie Declaration are true and correct copies of the court's Notice of Hearing (Case Management Conference and Complex Case Determination Hearing), dated September 12, 2018, and Defendant's Answer to Plaintiff's Complaint, filed in Alameda County Superior Court on October 22, 2018. There have been no further proceedings in case number RG18920047, and no other pleadings have been served upon or by Defendant in this action. *See* Christie Decl. ¶ 4.

2. Plaintiff John Ornelas ("Ornelas") claims that Defendant failed to pay all of his minimum and overtime wages, failed to provide proper meal and rest breaks, failed to pay all wages owed upon termination, failed to provide accurate wage statements, and engaged in unfair competition. *See generally* Complaint. He seeks to represent a class of "[a]ll Sales Employees who are or have been employed by Defendant in the State of

California at any time and at any Kate Spade, Coach, and/or Stuart Weitzman retail store or location" at any time from September 4, 2014 through the present. Complaint ¶ 40.[1]

3. Counsel for Plaintiff represented to counsel for Defendant that the Complaint and Summons were served via certified mail on September 13, 2018. *See* Christie Decl. ¶ 3. Attached **as Exhibit B** to the Christie Declaration is a true and correct copy of the USPS tracking receipt, as provided by Plaintiff. When sent by mail to a person outside of California, service is deemed complete on the 10th day after mailing, pursuant to California Code of Civil Procedure § 415.40. Defendant's Notice of Removal is timely because it is filed within thirty days of the completion of service. *See* 28 U.S.C. § 1446(b).

## DIVERSITY JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT

4. Under 28 U.S.C. § 1441(a), a defendant may remove to federal district court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." Under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), this Court has original jurisdiction over a class action if (1) it involves 100 or more putative class members, (2) any class member is a citizen of a state different from any defendant, and (3) the aggregated amount in controversy exceeds $5 million (exclusive of costs and interest). 28 U.S.C. §§ 1332(d)(2), (d)(5), and (d)(6). These requirements are satisfied here.

5. <u>Class Action</u>. CAFA applies to certain "class actions," which the statute defines as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute." 28 U.S.C. § 1332(d)(1)(B). Ornelas expressly brings "[t]his

---

[1] Defendant denies Ornelas's class allegations, including that he can represent the class as defined. However, for purposes of estimating the amount in controversy, the allegations of Ornelas's complaint are assumed to be true. *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) ("In measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint. The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will actually owe." (citations omitted)).

class action [] pursuant to California Code of Civil Procedure section 382." Complaint ¶ 4. Therefore, CAFA applies. *See Bodner v. Oreck Direct, LLC*, 2006 WL 2925691, at *3 (N.D. Cal. Oct. 12, 2006) (CAFA applies where "Plaintiffs' complaint alleges that the action is a class action, and recites the prerequisites to a class action under . . . California Code of Civil Procedure Section 382").

6. <u>Class Size</u>. The putative class exceeds 100 members. *See* Complaint ¶ 41(a); Declaration of Ben Shea in Support of Defendant's Notice of Removal ("Shea Decl.") ¶ 13.[2]

7. <u>Diversity of Citizenship</u>. "[U]nder CAFA, complete diversity is not required; 'minimal diversity' suffices." *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021 (9th Cir. 2007). Minimal diversity exists if any class member is a citizen of a state different from any defendant. 28 U.S.C. § 1332(d)(2).

8. The putative class members include citizens of the state of California. Ornelas is a citizen of the state of California. During the relevant period, Ornelas worked in California and kept a California address on file with the company, both of which demonstrate his California citizenship. Complaint ¶¶ 8, 14; Shea Decl. ¶ 13(a); *see Lam Research Corp. v. Deshmukh*, 157 F. App'x 26, 27 (9th Cir. 2005) (defendant who had lived and worked for plaintiff in Washington was presumptively a Washington citizen, despite his claim that he had changed his domicile from Washington to California); *Bey v. SolarWorld Indus. Am., Inc.*, 904 F. Supp. 2d 1103, 1105 (D. Or. 2012) (residential address provided by employee to employer is prima facie evidence of state citizenship). Further, Ornelas seeks to represent a class consisting of individuals "employed by Defendant in the State of California." Complaint ¶ 40. By definition, the putative class includes individuals who, like Ornelas, are California citizens.

---

[2] A defendant may make the requisite showing by setting forth facts in the notice of removal or by affidavit. *See Lamke v. Sunstate Equip. Co.*, 319 F. Supp. 2d 1029, 1032 (N.D. Cal. 2004).

9. Tapestry is not a citizen of the state of California. Rather, Tapestry is a citizen of Maryland and New York. "[A] corporation shall be deemed to be a citizen of every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business." 28 U.S.C. § 1332(c)(1). Tapestry has not been incorporated in California. Rather, Tapestry is organized and incorporated under the laws of the State of Maryland. Shea Decl. ¶ 3. Nor is California the state in which Tapestry has its principal place of business. Rather, as shown below, Tapestry's principal place of business is located in the State of New York.

10. A corporation's principal place of business is determined under the "nerve center" test. *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010). Under this test, the principal place of business is the state where the company's officers "direct, control, and coordinate [its] activities." *Id*. A corporation's nerve center is a "single place" and "should normally be the place where the corporation maintains its headquarters." *Id*. at 93. Relevant factors include where executives reside and maintain offices, where administrative and financial offices are located, where the board of directors meets, where income tax returns are filed, and where day-to-day control over the company is executed. *See, e.g., Tomblin v. XLNT Veterinary Care, Inc.*, 2010 WL 2757311, at *4 (S.D. Cal. July 12, 2010).

11. Under these standards, Tapestry's principal place of business is in New York. The executive officers of Tapestry, including the chief executive officer, president and chief administrative officer, chief financial officer, and global head of human resources, maintain their offices at Tapestry's headquarters in New York, New York. Shea Decl. ¶ 6. From its New York headquarters, Tapestry makes and implements operating, distribution, financial, employee relations, marketing, development, customer care, accounting, income tax, treasury, and legal policy decisions. *Id*. ¶ 7. Further, the majority of meetings of Tapestry's Board of Directors and stockholders take place in New York, its financial records are maintained there, and its tax returns are filed from there. *Id*. ¶¶ 8-10.

12. Accordingly, this action is between citizens of different states—Ornelas, who is a citizen of California (and seeks to represent a class including California citizens), and Defendant, which is a citizen of Maryland and New York.

13. <u>Amount in Controversy.</u>  Without conceding liability for any claims alleged by Ornelas or that Ornelas can properly represent the putative class he defined, Defendant avers, for purposes of this Notice only, that Ornelas's claims as pled place more than $5 million in controversy.  *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1198 n.1 (9th Cir. 2015) ("Even when defendants have persuaded a court upon a CAFA removal that the amount in controversy exceeds $5 million, they are still free to challenge the actual amount of damages in subsequent proceedings and at trial.  This is so because they are not stipulating to damages suffered, but only estimating the damages that are in controversy."); *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) (on removal, defendant does not "concede liability for the entire amount" alleged in complaint).  The Ninth Circuit has instructed that removal is proper if, from the allegations of the Complaint and the Notice of Removal, it is more likely than not that the amount in controversy exceeds $5 million.  *Rodriguez v. AT&T Mobility Servs., Inc.*, 728 F.3d 975, 981 (9th Cir. 2013) (overturning previous Ninth Circuit precedent requiring proof of amount in controversy to a "legal certainty" under some circumstances).  This standard is easily satisfied here, considering only putative class members who worked for Defendant in California Coach stores.  Considering putative class members who worked for Defendant at Kate Spade or Stuart Weitzman stores would greatly increase the amount in controversy.

14. For his Fourth Cause of Action, Ornelas claims that Tapestry failed to provide class members with required meal and rest breaks.  *See* Complaint ¶¶ 57-60.  He seeks a premium in the amount of one hour of pay for each workday that a compliant meal period was not provided and for each workday that a compliant rest period was not provided.  *See id.* ¶ 60.  The putative class includes at least 600 individuals who have worked for Tapestry as non-exempt, hourly assistant or associate managers at Coach

retail locations in California since September 4, 2014.³ *See id.* ¶ 13(e). These individuals worked more than 40,000 workweeks during this period and earned more than $21.00 per hour on average. *See id* ¶¶ 13(e), 13(g). The putative class also includes non-exempt, hourly sales associates at Coach retail locations in California who collectively worked more than 53,000 workweeks since May 23, 2017,⁴ and earned more than $10.50 per hour on average.⁵ *See* Shea Decl. ¶¶ 13(f), 13(i). Ornelas alleges that he and the putative class members were required "to have their bags, jackets, and other personal items checked by a Tapestry employee prior to leaving the retail store for all shifts and breaks," resulting in "routine" and "regular" break violations. *See id.* ¶¶ 15, 18, 59 (explaining that "after clocking out for a supposed meal break or stepping away for a purported rest break, Plaintiff remained under" Defendant's control due to the security checks). Because Ornelas alleges that security checks occurred each time an individual left the store on a break, and because Coach employees typically worked shifts longer than five hours (Shea Decl. ¶¶ 13(j)-13(k)), which entitled them to both a meal and rest break, his allegations suggest that a meal break and a rest break violation occurred on every shift. Given that putative class members typically worked at least four days per week (*id.* ¶¶ 13(l)-13(m)), these claims place more than $11.1 million in controversy: $6.7 million for assistant and associate managers at Coach stores (40,000 workweeks for × 4 shifts per week × 2 violations per shift × $21 = $6,720,000), and $4.4 million for sales associates at Coach stores (53,000 workweeks for × 4 shifts per

---

³ A four-year statute of limitations applies to claims brought pursuant to Section 17200 of the Business and Professions Code. *See Tomlinson v. Indymac Bank, F.S.B.*, 359 F. Supp. 2d 891, 898 (C.D. Cal. 2005).

⁴ Defendant excludes non-exempt, hourly sales associates who worked at a Coach retail location prior to May 23, 2017, in light of a settlement involving those individuals in the *Miranda v. Coach, Inc.* matter, case no. 3:14-cv-02031-JD in the Northern District of California. Defendant uses May 23, 2017 for greater simplicity, as it is the effective date of the *Miranda* settlement; however, any sales associates hired after May 3, 2016 would also not be affected by the settlement. Therefore, estimates involving Coach sales associates are conservative.

⁵ Unless otherwise noted, Tapestry's calculations include data from the start of the relevant liability period through December 16, 2017. Including data through the present would result in a higher workweek count and increase the amount in controversy.

week × 2 violations per shift × $10.50 = $4,452,000). *See Vasquez v. Randstad US, L.P.*, 2018 WL 327451, at *5 (N.D. Cal. Jan. 9, 2018) (finding the defendants' assumption of a 100% violation rate reasonable where the plaintiff alleged that employees "were consistently required to work through their meal periods"); *Duberry v. J. Crew Grp., Inc.*, 2015 WL 4575018, at *3 (C.D. Cal. July 28, 2015) ("[C]ourts have generally found the amount in controversy satisfied where a defendant assumes a 100% violation rate based on allegations of a 'uniform' illegal practice (or similar language) and where the plaintiff offers no evidence rebutting this violation rate." (citing *Unutoa v. Interstate Hotels & Resorts, Inc.*, 2015 WL 898512, at *2-3 (Mar. 3, 2015))).

  15. For his First, Second, and Third Causes of Action, Ornelas alleges that Tapestry failed to pay putative class members minimum and overtime wages for all hours worked. *See* Complaint ¶¶ 42-56. Ornelas alleges that, "after clocking out for their meal breaks and/or at the end of their shifts, Plaintiff and class members were required to wait off-the-clock for another employee to become available to perform the security bag check before they could leave," and that this time was "off-the-clock." Complaint ¶ 10. Ornelas claims that Defendant "routinely" failed to pay employees for "substantial period[s] of time off the clock" as a result of this alleged practice. *Id.* ¶ 15. Because of "Defendant's timekeeping system at the back of stores and requiring security bag checks to take place at the front of their stores," Ornelas suggests that putative class members worked uncompensated time on every shift. *See id.* ¶ 47. Ornelas seeks unpaid minimum wages as well as liquidated damages in the same amount. *Id.* ¶ 52. If, on average, putative class members worked just 30 minutes of unpaid time per week, the total amount in controversy for the unpaid wages claims, including liquidated damages, would be more than $800,000 (93,000 workweeks[6] × $9 minimum wage × .5

---

[6] 40,000 workweeks for assistant and associate managers at Coach stores, plus 53,000 workweeks for sales associates at Coach stores. *See* Standard Decl. ¶¶ 11(b)-11(c).

hours × 2 = $837,000).[7]  *See, e.g., Quintana v. Claire's Stores, Inc.*, 2013 WL 1736671, at *6 (N.D. Cal. Apr. 22, 2013) (one hour reasonable estimate of uncompensated time when plaintiff alleged that defendant systematically failed to compensate employees for time over eight hours); *Jasso v. Money Mart Express, Inc.*, 2012 WL 699465, at *5 (N.D. Cal. Mar. 1, 2012) (allegations of a "uniform policy and scheme" that resulted in violations "at all material times" supported reasonable estimate of one hour of unpaid time per week).

16. For his Sixth Cause of Action, Ornelas alleges that Tapestry owes penalties for having failed to pay all wages to employees upon the end of their employment, as required by Section 203 of the California Labor Code. *See* Complaint ¶¶ 64-67. Under Section 203, former employees whom an employer willfully denied wages may recover penalties in the amount of their daily rate of pay for a period of up to thirty days. *See* Cal. Lab. Code §203. Ornelas alleges that Defendant "willfully failed and refused, and continue to willfully fail and refuse, to timely pay compensation due to Class Member[s] upon termination or resignation as required by Labor Code § 201," and therefore these former employees could all be owed 30-day penalties. Complaint ¶ 67; *see Altamirano v. Shaw Indus., Inc.*, 2013 WL 2950600, at *12 (N.D. Cal. June 14, 2013) (in estimating amount in controversy, where plaintiff alleges pervasive violations, "it is reasonable to assume that each employee leaving employment would [be owed Section 203 penalties]"); *Helm v. Alderwoods Grp., Inc.*, 2008 WL 2002511, at *5 (N.D. Cal. May 7, 2008) (accord); *see also Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205-06 (E.D. Cal. 2008) (in estimating amount in controversy, court may assume maximum penalty consistent with plaintiff's allegations). Since September 4, 2015, approximately 280 of the Coach brand non-exempt California associate and assistant managers have separated from the company. *See* Shea Decl. ¶ 13(p). These individuals

---

[7] Since July 2014, California's minimum wage has always been at least $9 per hour. See *https://www.dir.ca.gov/iwc/minimumwagehistory.htm*

typically worked shifts of at least 7.5 hours per day, and earned more than $21.00 per hour on average. *See id.* ¶¶ 13(h), 13(j). Accordingly, an average 30-day penalty would be at least $4,725 per person (30 × 7.5 × $21 = $4,725). Since May 23, 2017, approximately 650 Coach brand non-exempt California sales associates have separated from the company. *Id.* ¶ (q). These individuals typically worked shifts of at least 6.5 hours per day, and earned more than $10.50 per hour on average. *See id.* ¶¶ 13(i), 13(k). Accordingly, an average 30-day penalty would be at least $2,047 per person (30 × 6.5 × $10.50 = $2,047.50). These individuals are potentially all eligible to recover Section 203 penalties.[8] Therefore, the total amount of Section 203 penalties in controversy exceeds $2.6 million based on Ornelas's allegations (($4,725 × 280 Coach assistant and associate managers = $1,323,000) + ($2,047.50 × 650 Coach sales associates = $1,330,875)).[9]

      17. For his Fifth Cause of Action, Ornelas alleges that Tapestry violated Labor Code Section 226 by providing inaccurate wage statements. Complaint ¶¶ 61-63. Section 226 provides for a penalty of $50 for the initial pay period in which a violation occurs and $100 per employee for each violation in a subsequent pay period. *See* Cal. Lab. Code § 226(e). From September 4, 2017 to the present, Tapestry has typically employed at least 1,200 non-exempt employees in California Coach stores at any time.[10] Shea Decl. ¶ 13(r)-13(s). Because Tapestry pays its employees bi-weekly (*id.* ¶ 11), it issued at least 31,200 wage statements during this period (1,200 employees × 26 pay

---

[8] A three-year statute of limitations applies to claims brought pursuant to Section 203. *Pineda v. Bank of America, N.A.*, 50 Cal. 4th 1389, 1395-96 (2010).

[9] Again, these estimates do not take into account putative class members who worked at Stuart Weitzman or Kate Spade stores. Using conservative estimates for just Kate Spade employees puts an additional $2.3 million in controversy in waiting time penalties alone. *Ibarra*, 775 F.3d at 1198 (defendant is "not stipulating to damages suffered, but only estimating the damages that are in controversy"). There have been more than 1,100 non-exempt Kate Spade employees in California who have separated from the company since September 4, 2015. Shea Decl. ¶ 13(b). These individuals typically worked shifts of at least six hours per day, and earned more than $12.00 per hour on average. *Id.* ¶¶ 13(c)-13(d). The average 30-day penalty would be at least $2,160 per person (30 × 6 × $12 = $2,160), adding at least $2.3 million to the amount in controversy ($2,160 × 1,100 = $2,376,000).

[10] A one-year statute of limitations applies to claims for penalties under Section 226(e). *See Hernandez v. Towne Park, Ltd.*, 2012 WL 2373372, at *14 (C.D. Cal. June 22, 2012).

periods). Here, Ornelas alleges that Tapestry "has routinely failed to provide Class Members . . . with timely and accurate wage and hour statements" during the relevant period. Complaint ¶ 62. Thus, under his theory, all wage statements arguably were deficient. Therefore, the amount in controversy for this claim exceeds $3 million ((1,200 initial violations × $50) + (30,000 subsequent violations × $100) = $3,060,000).

18.  Ornelas also seeks attorneys' fees, which must be included in the amount in controversy when available by statute. *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794 (9th Cir. 2018) ("[I]f the law entitles the plaintiff to future attorneys' fees if the action succeeds, 'then there is no question that future [attorneys' fees] are 'at stake' in the litigation,' and the defendant may attempt to prove that future attorneys' fees should be included in the amount in controversy." (internal citation omitted)); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998); *see* Complaint & Prayer for Relief. The Ninth Circuit "has established 25% of the common fund as a benchmark award for attorney fees" in class actions. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998); *see also Salazar v. Johnson & Johnson Consumer Inc.*, 2018 U.S. Dist. LEXIS 161293, at *19 (C.D. Cal. Sept. 19, 2018). Therefore, these fees place an additional several million dollars in controversy, given the potential damages and penalties at issue. *See, e.g., Rodriguez v. Cleansource, Inc.*, 2014 WL 3818304, at *4 (S.D. Cal. Aug. 4, 2014) (denying motion to remand where defendant showed potential damages of $4.2 million because attorney's fees of 25 percent brought the total amount in controversy to $5.3 million); *see also Deaver v. BBVA Compass Consulting & Benefits, Inc.*, 2014 WL 2199645, at *6 (N.D. Cal. May 27, 2014) (accounting for attorney's fees by adding 25 percent of potential damages to amount in controversy); *Giannini v. Nw. Mut. Life Ins. Co.*, 2012 WL 1535196, at *4 (N.D. Cal. Apr. 30, 2012) (same); *Jasso*, 2012 WL 699465, at *7 (reasonable to assume attorney's fees valued at 25 percent of common fund on removal).

19.  Accordingly, in combination, Ornelas's claims for final wages, meal and rest break violations, unpaid minimum wages, inaccurate wage statements, and

attorneys' fees easily place more than $5 million in controversy, without even considering Ornelas's other claim for unpaid overtime wages, or putative class members who worked at Stuart Weitzman or Kate Spade brand stores. *See* Complaint & Prayer for Relief. Therefore, the amount in controversy requirement is satisfied. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700-01 (9th Cir. 2007) (remand denied under preponderance of the evidence standard where defendant's conservative estimates exceeded the requisite amount).

20. There are no grounds that would justify this Court in declining to exercise its jurisdiction pursuant to 28 U.S.C. § 1332(d)(3) or require it to decline to exercise jurisdiction pursuant to 28 U.S.C. § 1332(d)(4).

## VENUE

21. The United States District Court for the Northern District of California is the judicial district embracing the place where Case No. RG18920047 was filed by Ornelas and is therefore the appropriate court for removal pursuant to 28 U.S.C. § 1441(a).

WHEREFORE, Defendant requests that the above action now pending against it in the Superior Court of California, County of Alameda, be removed to this Court.

Dated:  October 22, 2018

**AKIN GUMP STRAUSS HAUER & FELD LLP**
GREGORY W. KNOPP
JONATHAN S. CHRISTIE
VICTOR A. SALCEDO

By  */s/ Gregory W. Knopp*
Gregory W. Knopp
Attorneys for Defendant
Tapestry, Inc.