UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOHN ORNELAS,

    Plaintiff,

v.

TAPESTRY, INC.,

    Defendant.

No. C 18-06453 WHA

**ORDER RE MOTION FOR PARTIAL SUMMARY JUDGMENT**

**INTRODUCTION**

In this wage-and-hour putative class action, defendant moves for partial summary judgment. Because plaintiff has failed to show that defendant did not provide rest and meal breaks or discouraged plaintiff from taking adequate breaks, partial summary judgment as to claims four through seven is **GRANTED**. Furthermore, because plaintiff raises no genuine dispute that defendant acted willfully, knowingly, or intentionally in failing to pay wages due at termination or provide accurate wage statements, partial summary judgment as to claims five and six is **GRANTED**. While plaintiff lacks Article III standing to bring break violation claims under the California Labor Code's Private Attorney General Act, the claim can be remanded to state court, so defendant's motion for partial summary judgment as to the eighth claim is **DENIED**.

1

**STATEMENT**

Defendant Tapestry, Inc. is a multinational luxury fashion holding company and the parent company of Coach New York, Kate Spade New York, and Stuart Weitzman (Dkt. No. 41 at ¶ 10). Plaintiff John Ornelas is a former non-exempt, hourly employee at defendant's Stuart Weitzman retail stores in Canoga Park and Beverly Hills, California (*id.* at ¶ 15). He worked as a full-time sales associate from April 2016 to June 2018 (*ibid*).

In September 2018, plaintiff filed a putative class action complaint in the Superior Court of California, Alameda County. Defendant removed the action here. The first amended complaint asserts eight claims alleging that defendant: (1) failed to pay employees' compensation for all hours worked, in violation of Sections 216 and 1194 of the California Labor Code; (2) failed to pay minimum wages, in violation of Section 1194 of the California Labor Code; (3) failed to pay overtime compensation, in violation of Sections 510 and 1194 of the California Labor Code; (4) failed to provide employees with sufficient rest and meal breaks, in violation of Sections 226.7 and 512 of the California Labor Code; (5) provided employees with inaccurate written wage statements, in violation of Section 226 of the California Labor Code; (6) failed to pay accrued wages and other compensation due immediately to an employee upon termination, in violation of Sections 201–203 of the California Labor Code; (7) engaged in unfair and unlawful business practices, in violation of Sections 17200, *et seq.*, of the California Business and Professions Code; and (8) owes civil penalties and attorney's fees for these violations under the California Labor Code's Private Attorney General Act ("PAGA") (*id.* at ¶¶ 2, 43–78).

Plaintiff brings the above claims based on defendant's theft-prevention policy that required all sales employees to have their bags and coats searched by another employee prior to leaving the store for breaks or after shifts (*id.* at ¶ 16). Even if employees did not bring coats or bags to work, they needed to obtain visual acknowledgment from a coworker or manager before leaving the store for a break (Ornelas Dep. 87:24–88:19). Plaintiff alleged that defendant told its employees to clock out before undergoing the security screening, and sometimes the screening resulted in employees spending substantial periods of time under

2

defendant's control while not being paid (Dkt. No. 41 at ¶¶ 16–18). Plaintiff further testified that the security screening would prevent employees from receiving legally compliant rest and meal breaks (*id.* at ¶¶ 16, 19). Defendant now moves for partial summary judgment for claims one and two as they pertain to liquidated damages, claims four through seven in their entirety, and claim eight as it relates to rest-and-meal-break violations.

**ANALYSIS**

Summary judgment is proper where the pleadings, discovery, and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a). Material facts are ones that might affect the outcome of the case under the governing, substantive law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). Rule 56 does not require the moving party to negate its opponent's claims but only show that the evidence has failed to amount to a genuine issue of material fact. *Ibid.* If the moving party is able to meet this burden of production, then the nonmoving party must go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial. *Ibid.* The nonmoving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings." *Anderson*, 477 U.S. at 256. If the nonmoving party fails to show that there is a genuine issue of material fact, the moving party's motion for summary judgment should be granted. *See Celotex Corp.*, 477 U.S. at 323.

1. **CLAIM FOUR—REST-AND-MEAL-BREAK VIOLATIONS.**

Rule 8(a)(2) requires that the allegations in the complaint "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (quotation omitted). Where the complaint fails to include necessary factual allegations to state a claim, it is insufficient to present the claims to the district court by raising them at summary judgment. *See Navajo Nation v. U.S. Forest Service*,

3

535 F.3d 1058, 1080 (9th Cir. 2008). "[S]ummary judgment is not a procedural second chance to flesh out inadequate pleadings." *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) (quotation omitted).

Plaintiff contends in his opposition that defendant committed rest-and-meal-break violations because sometimes plaintiff had to work through his breaks when the store was busy or understaffed (Dkt. No. 58 at 4). Plaintiff made no such allegations, however, in his first amended complaint, the operative pleading; the first amended complaint only alleged that the security screenings caused rest and meal breaks to be shorter than the legally required time (Dkt. No. 41 at ¶¶ 16, 19, 58–61). Plaintiff agreed in his deposition that the claims he asserts "concern the company's practices regarding security checks" (Ornelas Dep. 66:3–6). As such, only those alleged violations related to the security screening will be evaluated.

### A. PLAINTIFF RAISES NO TRIABLE FACT THAT HE SUFFERED MEAL-BREAK VIOLATIONS.

With some exceptions not applicable here, Section 512(a) of the California Labor Code states that "[a]n employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes . . . ." Industrial Welfare Commission (IWC) Wage Order No. 7, Subdivision 11(C) provides that "[u]nless the employee is relieved of all duty during a 30 minute meal period, the meal period shall be considered an 'on duty' meal period and counted as time worked." Cal. Code Regs., tit 8, § 11070. Taken together, Section 512(a) and Wage Order No. 7 instruct that an employer is obligated to provide its employees with a thirty-minute, off-duty meal break. *See Brinker Restaurant Corp. v. Superior Court*, 53 Cal.4th 1004, 1043 (2012). The employer satisfies this obligation when it gives employees a reasonable opportunity to take an uninterrupted break, free of all duty and control by the employer. *Ibid.* The employer has no obligation to police meal breaks to ensure the employees do not work, but the employer cannot impede or discourage the employees' breaks. *Id.* at 1040–42. Section 226.7(c) of the California Labor Code requires employees who have experienced meal-break violations to be

1    paid break "premiums," which are an additional hour of compensation for each noncompliant
2    meal break.
3        Here, the first amended complaint alleges that defendant did not relieve plaintiff of all duties nor relinquish control over him during his breaks because plaintiff sometimes had to wait in the store for the security screening to be conducted while off the clock for his meal breaks (Dkt. No. 41 at ¶¶ 59–60). Defendant argues that it is entitled to summary judgment as to plaintiff's meal-break violation claim because plaintiff has failed to raise a genuine dispute of fact that he experienced a meal-break violation due to the security screenings. Defendant further contends that the break premiums it prophylactically paid plaintiff compensated him for any break violations he may have suffered.

    Plaintiff very rarely endured a security screening longer than a couple seconds when leaving for a meal break. Plaintiff testified that if another employee was working, they would check each other out for their meal breaks (Ornelas Dep. 95:2–4). However, sometimes the only other employee was a manager who occasionally had conference calls around plaintiff's lunch time (*id*. at 95:4–9). When this occurred, plaintiff would clock out for lunch and have to wait for the manager to give the security check and acknowledge plaintiff's departure for the break (*id.* at 95:4–20). Plaintiff agreed that the security screening had no impact on his ability to take a proper meal break unless his manager was on a conference call and was unable to observe him leaving the store (*id.* at 96:9–12). On such occasions, plaintiff estimated he would wait five to ten minutes before being permitted to leave (*id.* at 95:14–20). Plaintiff estimated that the manager would be on a conference call at least once a month (*id.* 98:5–14). Plaintiff worked for defendant for about 26 months, so, by this estimate, plaintiff experienced at least 26 delays to the start of his lunch period due to the security screening, assuming he was delayed every time his manager was on a call. However, plaintiff provides no evidence that defendant required him to return from his meal break exactly thirty minutes after he clocked out for the break.

    Timecards from plaintiff's employment show that plaintiff clocked out in excess of thirty minutes on numerous occasions. "Ornelas punched out for a meal period between 31 and 35

5

minutes in length over 120 times; a meal period between 36 and 40 minutes in length over 70 times; a meal period between 41 and 45 minutes in length over 60 times; and a meal period 46 minutes or longer over 50 times" (Christie Decl. ¶ 4). Assuming plaintiff had to wait ten minutes every time the manager was on the conference call, on at least 26 occasions, his lunches would need to have been at least forty minutes long to fully adjust for the delay. Plaintiff took lunches over forty minutes long on 110 occasions, but many were shorter.

Furthermore, plaintiff provides no evidence of being reprimanded for taking meal breaks longer than thirty minutes, nor does he claim that defendant had a policy against meal breaks over thirty minutes. In his declaration, plaintiff says that he "still had to return by a certain time and was not permitted to take a long lunch," but the timecard entries show many lunch breaks over thirty minutes (Ornelas Decl. ¶ 10; Christie Decl. ¶ 4). Additionally, the defendant's employee manual stated that "a non-exempt employee must receive an unpaid meal period of no less than thirty (30) minutes for any work shift over five (5) hours" (Dkt. No. 56-1 at 357). Plaintiff agreed in his deposition that defendant's meal-break policy complied with California law (Ornelas Dep. 90:6–16). If plaintiff chose to return to work exactly thirty minutes after he clocked out for lunch despite a long security screening at the start of the break period, it was not defendant's fault. Since plaintiff provides no evidence that defendant required that his lunch be only thirty minutes, even if the security screening went ten minutes long, any shortened meal break was due to plaintiff's own choice. Defendant satisfied its obligation by providing plaintiff with the opportunity to take a break and not discouraging plaintiff from doing so. *See White v. Starbucks Corp.*, 497 F.Supp.2d 1080, 1087 (N.D. Cal. 2007) (Judge Vaughn R. Walker); *Scianna v. Costco Wholesale Corp.*, 2019 WL 4242931, at *8 (N.D. Cal. Sep. 6, 2019) (Judge Nathanael M. Cousins).

Lastly, despite the plaintiff never having complained of shortened meal breaks, defendant paid plaintiff over 100 meal-break premiums to preemptively compensate plaintiff for any potential violations (Ornelas Dep. 96:13–17; Christie Decl. ¶ 5; Bishop Decl. ¶ 4, Ex. B). So, if plaintiff did experience meal-break violations on the roughly 26 occasions where he was subjected to a longer security screening, plaintiff has already been compensated and, therefore,

6

cannot recover penalties under Section 226.7 of the California Labor Code. *See Wert v. U.S. Bancorp*, 2016 WL 1110302, at \*5 (S.D. Cal. Mar. 22, 2016) (Judge Cynthia Bashant).

Because plaintiff cannot show defendant prevented or discouraged him from taking a full thirty-minute meal break when the security screening went long, plaintiff cannot establish that he experienced a meal-break violation due to the security screening; plaintiff cannot show a genuine issue of material fact in support of his claim that defendant failed to provide legally compliant meal breaks. This alone is dispositive. Additionally, if plaintiff did experience meal-break violations due to the security screening, plaintiff has already received break premiums for the violations. Thus, for the foregoing reasons, summary judgment as to the meal-break portion of the fourth claim is **GRANTED**.

### B. PLAINTIFF HAS FAILED TO RAISE A GENUINE DISPUTE OF FACT THAT HE EXPERIENCED REST-BREAK VIOLATIONS.

The rest-break provision of the IWC Wage Order No. 7, Subdivision 12(A) provides in part that "[e]very employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof." Cal. Code Regs., tit 8, § 11070. The reasoning for meal-break violations applies to rest-break violations, too. *See Cole v. CRST, Inc.*, 317 F.R.D. 141, 144 (C.D. Cal. 2016) (Judge Virginia A. Phillips); *Porch v. Masterfoods, USA, Inc.*, 685 F.Supp.2d 1058, 1073 (C.D. Cal. 2008) (Judge Stephen V. Wilson).

Defendant's only obligation was to provide employees with the opportunity for a rest break, and defendant did not need to stamp out all voluntary work during the rest break. *See White*, 497 F.Supp.2d at 1088. Section 226.7(c) of the California Labor Code requires employees who have experienced rest-break violations to be paid an additional hour of compensation for each noncompliant rest break.

Here, just as for the meal breaks, the first amended complaint alleges that defendant's security screenings caused plaintiff's rest breaks to be "interrupted, impeded, shortened, and overall illusory in nature" (Dkt. No. 41 at ¶ 60). Plaintiff also contends that defendant's

security screening caused rest-break violations because the delays prevented plaintiff from taking a rest break in the middle of each work period, as required by IWC Wage Order No. 7 (Dkt. No. 58 at 4).

There is a contradiction in plaintiff's sworn word about rest breaks. In plaintiff's deposition, he replied "Yes" to the question "Would you agree that when you left the store for a rest break, after the other person observed you leaving, you always took at least ten minutes for the break?" (Ornelas Dep. 89:16–21). This means plaintiff never experienced a violation in regard to his rest breaks, since he always took a full break following the screening. Plaintiff, however, has since provided a declaration where he states that "part of my rest breaks . . . would be spent waiting for a manager or other employee to become available to conduct the bag check before I could leave the store" (Ornelas Decl. ¶ 5).

"The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991). The sham declaration rule is in tension with the principle that, at the summary judgment stage, it is not the court's role to make credibility determinations or weigh conflicting evidence. Thus, the sham declaration rule "should be applied with caution." *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1264 (9th Cir. 1993). As a result, a court may only discount a sham declaration that (1) flatly contradicts earlier deposition testimony, and (2) was provided for the sole purpose of creating a genuine issue of material fact. *See Kennedy*, 952 F.2d at 266–67; *Slojewski v. Polam Federal Credit Union*, 473 Fed. Appx. 534, 535 (9th Cir. 2012). Thus, "the non-moving party is not precluded from elaborating upon, explaining or clarifying prior testimony elicited by opposing counsel on deposition[, and] minor inconsistencies that result from an honest discrepancy . . . afford no basis for excluding an opposition affidavit." *Messick v. Horizon Indus.*, 62 F.3d 1227, 1231 (9th Cir. 1995).

In the present case, plaintiff's deposition testimony that he always took at least a ten-minute break after a security screening came after a line of questioning having to do with the security screening process for when employees did not exit the store with a coat or bag (Ornelas Dep. 87:24–89:20):

> Q: Okay. So if you chose to leave the store during a rest break, somebody would have to observe you leaving?
>
> A: Correct.
>
> Q: Even though you didn't have a bag or a coat?
>
> A: Correct.
>
> Q: And it's your testimony that sometimes you would have to wait for that person to look at you?
>
> A: Yes.
>
> . . .
>
> Q: Would you agree that when you left the store for a rest break, after the other person observed you leaving, you always took at least ten minutes for the break?
>
> A: Yes, if -- yeah.

All that was required in that situation was a visual acknowledgement from a coworker or manager that plaintiff was leaving the store for a break, which plaintiff acknowledged would typically take only a few seconds (Ornelas Dep. 86:2–88:25). This leaves open the possibility that plaintiff's breaks still could be impeded upon *if he did bring a coat or bag with him for a break*, requiring he go through the more extensive security check. Plaintiff testified that he did not bring a bag to work, but he did bring a coat on the cold days in winter (Ornelas Dep. 64:21–65:16; 86:18–20). Therefore, the two sworn statements leave open the possibility that he had to wait too long on the cold days with a coat such that he did not get the full ten minutes of break on those occasions. That possibility may be the barest of possibilities, but it is enough to save the declaration from the sham declaration rule.

Regardless, plaintiff has failed to raise a genuine issue of material fact that he suffered rest-break violations by defendant. Defendant's policy in the employee manual stated that "[e]mployees are eligible for ten (10) minutes of 'net rest' for every four (4) hours of work" (Dkt. No. 56-1 at 357). Plaintiff acknowledged in his deposition that he understood he was responsible for taking rest breaks in accordance with defendant's policy (Ornelas Dep. 84:9–21). As previously mentioned, plaintiff agreed that when all that was required for the security screening was a visual acknowledgement from a coworker that he was leaving for a break, he

9

always took at least ten minutes for the break after leaving the store (*id.* at 89:16–21). It is possible that when he had to have a jacket searched, this was not the case. However, plaintiff provides no evidence other than his statement in his declaration of this possibility (Ornelas Decl. ¶ 9):

> Stuart Weitzman's bag check policy also interfered with my ability to take meal and rest breaks. I and my co-workers had to undergo a bag check whenever we left the store, not just at the end of our shifts. As a result, part of my rest breaks and meal breaks would be spent waiting for a manager or other employee to become available to conduct the bag check before I could leave the store.

Even treating this statement as true, it is not enough for establishing a rest-break violation. The extra time plaintiff may have spent off the clock waiting for the security screening to be conducted is not an issue of non-compliant breaks but unpaid wages. The crux of the matter is whether plaintiff was able to take a full-length break, regardless of if it was preceded by time spent waiting for a security screening. District courts have granted summary judgment in favor of the employer-defendant where the plaintiff-employee did not provide testimony that the defendant prohibited the plaintiff from taking a full break:

> By his own testimony, however, [plaintiff] was never required to work through the rest break, and he was allowed to continue his break once he made others aware that he was on break. [Plaintiff] does not testify that after being asked to complete a task, he was prohibited from then taking a full, ten minute rest break. Further, [plaintiff] has cited no authority, and the Court is unaware of any, that being asked to complete a task prior to taking a rest break violates California rest break laws.

*Cleveland v. Groceryworks.com, LLC*, 200 F.Supp.3d 924, 956 (N.D. Cal. 2016) (cleaned up) (Judge Joseph C. Spero); *see also Porch*, 685 F.Supp.2d at 1073. Plaintiff does not claim that he was prevented from taking more than ten minutes of break or that he was discouraged from taking a full ten minutes after a longer security screening. Thus, if plaintiff took less than a ten-minute break, it was not the fault of the employer. Defendant cannot be blamed if plaintiff chose to return to work after less than ten minutes of rest. Defendant satisfied its obligations

10

by making the rest break available to plaintiff and not discouraging plaintiff from taking an adequate break.

As to the requirement that the break be in the middle of the shift, plaintiff never asserts that the security screening prevented him from taking a rest break in the middle of the work period. Plaintiff alleged in his declaration that he sometimes missed rest breaks when the store was busy or understaffed (Ornelas Decl. ¶ 11). However, as previously discussed, the first amended complaint did not allege break violations unrelated to the security screening and therefore plaintiff cannot move the goal posts, now. Accordingly, summary judgment as to the rest-break violation portion of the fourth claim is **GRANTED**.

### 2. CLAIMS FIVE AND SIX—DERIVATIVE WAGE STATEMENT AND WAITING TIME PENALTIES.

Plaintiff's fifth claim for relief seeks penalties for failure to furnish accurate wage and hour statements pursuant to California Labor Code Section 226, and plaintiff's sixth claim seeks waiting time penalties pursuant to California Labor Code Sections 201–203.

Section 203 provides that "[i]f an employer willfully fails to pay . . . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date . . . until paid or until an action . . . is commenced; but the wages shall not continue for more than 30 days." Willful means that the employer intentionally failed or refused to perform an act which was required to be done. *Barnhill v. Robert Saunders & Co.*, 125 Cal.App.3d 1, 7 (1981).

> [A]n employer's failure to pay is not willful if that failure is due to (1) uncertainty in the law; (2) representations by the taxing authority that no further payment was required; or (3) the employer's "good faith mistaken belief that wages are not owed" grounded in a "'good faith dispute,'" which exists when the "employer presents a defense, based in law or fact which, if successful, would preclude any recovery on the part of the employee." A good faith dispute can exist even if the employer's proffered defense is "ultimately unsuccessful," but not if the defense is also "unsupported by any evidence, [is] unreasonable or [is] presented in bad faith."

*Diaz v. Grill Concepts Services, Inc.*, 23 Cal.App.5th 859, 868 (2018) (citations omitted); *see* Cal. Regs. tit. 8, § 13520. An employer's reasonable, good faith belief that wages are not

11

owed may negate a finding of willfulness. Cal. Code Regs., tit. 8, § 13520(a); *Road Sprinkler Fitters Local Union No. 669 v. G & G Fire Sprinklers, Inc.*, 102 Cal.App.4th 765, 782 (2002). For example, in *Barnhill*, a discharged employee had an outstanding balance on a promissory note with her employer, so the employer withheld part of her final wages to repay the note. 125 Cal.App.3d at 4. The court held that the employer need not pay penalties under Section 203 because the state of the law was unclear at the time the employer withheld the wages. *Id.* at 5, 8–9. Similarly, in *Amaral v. Cintas Corp. No. 2*, 163 Cal.App.4th 1157, 1201–03 (2008), the employer's actions did not trigger Section 203 penalties when he failed to pay employees a wage rate in compliance with a local ordinance because "no court had previously addressed the scope or the validity of the City's" wage ordinance; the employer was found to have a good faith belief that precluded a finding of willfulness. *Ibid.*

Section 226(a) requires every employer to furnish "semimonthly or at the time of each payment of wages" an accurate itemized wage statement listing the employee's wages and other specified categories of information. An employee who suffers an injury under Section 226(a) may recover damages under Section 226(e). A claim for damages under Section 226(e) requires a showing of: "(1) a violation of Section 226(a); (2) that is 'knowing and intentional'; and (3) a resulting injury." *Willner v. Manpower Inc.*, 35 F.Supp.3d 1116, 1128 (N.D. Cal. 2014) (Judge Jon S. Tigar).

The California Supreme Court has linked the "knowing and intentional" standard to the "willfully" standard in the Labor Code. *See Ex parte Trombley*, 31 Cal.2d 801, 807–08 (1948); *Magadia v. Wal-Mart Associates, Inc.*, 384 F.Supp.3d 1058, 1081–82 (N.D. Cal. 2019) (Judge Lucy H. Koh). While plaintiff points to a few cases finding that a good faith dispute that acts as a defense under Section 203 cannot be applied to Section 226, defendant rightly points out that the weight of authority has held that it does. A majority of courts find that an employer's good faith belief that it is not violating Section 226 precludes a finding of a knowing and

12

intentional violation.[*] This order adopts the majority view that a good faith dispute can preclude recovery by the plaintiff under both Section 203 and Section 226.

Plaintiff alleges that he should receive waiting time and inaccurate wage statement penalties since he was not compensated for his time in the security screening, he is owed break premiums for the shortened breaks, and this compensation was not reflected in his wage statements. Defendant asserts that plaintiff is not owed penalties to the extent his break violation claims fail and that plaintiff cannot meet the heightened culpability standards required by the two derivative penalty statutes. In the alternative, defendant argues that there was a good faith dispute as to whether defendant had to compensate plaintiff for his time during the security screening, or, even if the time during the security screening was compensable, defendant could disregard it as *de minimis*. Since this order holds that plaintiff did not suffer break violations, plaintiff cannot receive derivative penalties to the extent they are predicated on rest-and-meal-break violations.

### A. GOOD FAITH DISPUTE AS TO WHETHER THE TIME WAS COMPENSABLE.

As to the derivative penalties resulting from the alleged unpaid wages, the California Supreme Court's ruling in *Frlekin v. Apple, Inc.*, 8 Cal.5th 1038, 1056 (2020), decisively held that employees must be compensated for time spent in a security screening. However, this ruling came well after plaintiff's employment with defendant, which ended in June 2018, so prior caselaw must be examined to determine if defendant can establish a good faith dispute based on uncertainty in the law.

At all material times, IWC Wage Order No. 7 required employers to pay employees a minimum wage for "all hours worked in the payroll period." Subdivision 2(G) defined "hours worked" as "the time during which an employee is subject to the control of an employer and

---

[*] *Magadia*, at 1081–82; *Woods v. Vector Marketing Corp.*, 2015 WL 2453202, at *3 (N.D. Cal. May 22, 2015) (Judge Edward M. Chen); *Villalpando v. Exel Direct Inc.*, 2015 WL 5179486, at *37 (N.D. Cal. Sept. 3, 2015) (Judge Joseph C. Spero); *Apodaca v. Costco Wholesale Corp.*, 2014 WL 2533427, at *3 (C.D. Cal. June 5, 2014) (Judge Dale S. Fischer); *Wright v. Adventures Rolling Cross Country, Inc.*, 2013 WL 1758815, at *9 (N.D. Cal. Apr. 24, 2013) (Edward M. Chen); *Dalton v. Lee Publ'ns, Inc.*, 2011 WL 1045107, at *5 (S.D. Cal. Mar. 22, 2011) (Judge Barry Ted Moskowitz); *Stafford v. Brink's, Inc.*, 2014 WL 12586066, at *5 (C.D. Cal. Aug. 5, 2014) (Judge Michael W. Fitzgerald).

includes all the time the employee is suffered or permitted to work, whether or not required to do so." Cal. Code Regs., tit 8, § 11070. Before *Frlekin* was sent to the California Supreme Court by the Ninth Circuit, and prior to plaintiff's employment, the district court ruled on the case and determined that the time employees spent waiting for a security screening did not qualify as time where the employees were "suffered or permitted to work," and thus it was not compensable under that prong of Subdivision 2(G). *Frlekin v. Apple Inc.*, 2015 WL 6851424, at *10 (N.D. Cal. Nov. 7, 2015). It was further held that since employees had the choice to skip the security screening by not bringing belongings to work, employees' time during the screening was also not compensable under the "control" prong of Subdivision 2(G). *Id.* at *6.

The case before us is distinguishable as to the "control" prong of the analysis. Here, even if plaintiff did not have a bag or coat, he had to wait for acknowledgement from another employee or manager before leaving the premises for a break. Plaintiff testified that roughly once a month, this required that he wait, off the clock, for a manager to end a conference call before he could leave for his meal break. Plaintiff has further testified that it was a practice in defendant's Rodeo Drive store that if multiple employees were leaving at the same time, the employees would have to wait to leave together while those who brought bags were subjected to the screening (Ornelas Dep. 74:17–25). Plaintiff said that he "had to wait more than [he] could just leave" (*id.* at 77:5–8). There was no way for him to avoid the security screening, unlike the plaintiffs in *Frlekin*, who could skip the screening by not bringing bags to work. Because of these distinctions, the *Frlekin* district court decision does not provide the proof that defendant could not have known the time was compensable to the extent defendant asserts it does.

Defendant points to other district court cases interpreting the issue of security screenings under California law to further bolster its argument, yet they suffer the same issue; in each case, the plaintiffs-employees could have avoided the security screening altogether, thus the "control" prong did not apply (each case agreed that time spent in security line would not qualify as compensable under the "suffered and permitted to work" prong, either). *See In re Amazon.com, Inc., Fulfillment Ctr. Fair Lab. Standards Act (FLSA) & Wage & Hour Litig.*,

14

2017 WL 2662607, at *3 (W.D. Ky. June 20, 2017) (Judge David J. Hale); *Scott-George v. PVH Corp.*, 2016 WL 3959999, at *8–9 (E.D. Cal. July 22, 2016) (Judge Troy L. Nunley); *In re Pac. Sunwear of Cal., Inc.*, 2016 WL 4250681, at *10 (Bankr. D. Del. Aug. 8, 2016) (Judge Laurie Selber Silverstein). In *In re Amazon.com*, employees who did not bring belongings to work still had to walk through a detector, but the court pointed out this caused no delay to the employees; in those circumstances the employees were not subject to the employer's control during the security screening. 2017 WL 2662607 at *2. Here, even without a bag or coat, plaintiff was still sometimes delayed by the screening. Thus, the present case is markedly different from the prior cases defendant proffers to show it could not have known the time in the security line was compensable.

Plaintiff points to *Bono Enterprises, Inc. v. Bradshaw*, 32 Cal.App.4th 968 (1995), which held that employees who were forbidden from leaving the premises during lunch breaks remained under the employer's control and thus should have been compensated for the time. Taken together, *Bono* and the district court cases defendant supplies imply that the law at the time of plaintiff's employment held that time in a security screening would qualify as compensable under the "control" prong if the screening was unavoidable by the employees and caused delay. Plaintiff has testified that defendant's security screening was such a scenario.

However, no case during or prior to plaintiff's employment explicitly held that unavoidable time spent in a security screening would qualify as compensable. The *Frlekin* district court decision pointed out in its discussion of the "control" prong that there was "no decision on point, so this order will now lay out the decisional law," further demonstrating the ambiguity in this area of the law at the time. 2015 WL 6851424 at *3. Thus, despite the fact that it was potentially predictable that the time in an unavoidable security screening would eventually be found compensable, there was no clear ruling on the matter during plaintiff's employment.

15

### B. *GOOD FAITH DISPUTE BASED ON THE DE MINIMIS STANDARD.*

Defendant also asserts that a good faith dispute may exist even if the time was compensable since, at the time of plaintiff's employment, the federal *de minimis* standard was potentially applicable to California law claims (Dkt. No. 56 at 12). Like the question of compensability of time spent in a security screening, the California Supreme Court determined that the federal *de minimis* defense does not apply to California law claims *after* plaintiff's employment ended; the decision was published in July 2018, and plaintiff's employment ended June 2018. *See Troester v. Starbucks Corp.*, 5 Cal.5th 829 (2018). Thus, prior case law must be reviewed.

Before *Troester*, the law regarding what amount of work was considered *de minimis* and whether employers must compensate employees for *de minimis* work, was unclear, but some cases held that time spent in security screenings qualified as *de minimis*. *See Alvarado v. Costco Wholesale Corp.*, 2008 WL 2477393, at *3 (N.D. Cal. June 18, 2008) (Judge Jeffrey S. White); *Busk v. Integrity Staffing Solutions, Inc.*, 713 F.3d 525, 533 (9th Cir. 2013). In each of these cases, the time spent in the security screening was less than the longest screening plaintiff experienced. However, at the time, our court of appeals held that there was no precise amount of time and no rigid rule to be applied with mathematical certainty, so courts could have considered a few factors to determine whether compensation was appropriate. *See Lindow v. United States*, 738 F.2d 1057, 1062 (9th Cir.1983). This flexible standard created uncertainty as to the bounds of the *de minimis* doctrine. Yet, to the extent that the law regarding the application of the *de minimis* standard to the California Labor Code was clear at all, it indicated that the doctrine did apply. *See Garcia v. Tapestry, Inc.*, 2019 WL 12105505, at *11 (C.D. Cal. May 10, 2019) (Judge Dolly M. Gee). If successful, the *de minimis* standard would preclude plaintiff's recovery, thus qualifying as basis for a good faith dispute. *Ibid.*

It was unclear whether the time spent in the security line was compensable and whether the *de minimis* standard was applicable during plaintiff's employment. The two issues taken together lead to the conclusion that there was uncertainty in the law as to defendant's compensatory obligations. Even if either or both defenses would be ultimately unsuccessful,

16

they still give rise to a "good faith dispute," which is all that is required to preclude recovery. *Diaz*, 23 Cal.App.5th at 868. Therefore, plaintiff is precluded from recovering penalties under Sections 203 and 226 since defendant has raised a good faith dispute as to whether it acted "willfully" or was "knowing and intentional" in its alleged failure to adequately compensate plaintiff in a timely manner and provide accurate wage statements. Thus, defendant's motion for summary judgment as to plaintiff's fifth and sixth claims is **GRANTED**.

3. **CLAIMS ONE AND TWO—LIQUIDATED DAMAGES UNDER SECTION 1194.2**

As part of plaintiff's claims for unpaid wages and failure to pay minimum wage, plaintiff is seeking liquidated damages for the alleged violations pursuant to California Labor Code Section 1194.2. Section 1194.2(b) provides that "if the employer demonstrates . . . that the act or omission giving rise to the action was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of any provision of the Labor Code relating to minimum wage, or an order of the commission, the court . . . may, as a matter of discretion, refuse to award liquidated damages. . . ." This order has established that the law concerning defendant's obligation to compensate plaintiff for time in the security screening was unsettled during plaintiff's employment. Thus, defendant's omission was due to a good faith belief based on reasonable grounds that it did not need to compensate plaintiff. While this means that the Court has discretion to refuse an award of liquidated damages, the Court declines to make such a determination at the summary judgment phase. Thus, defendant's partial summary judgment motion as to claims one and two as they pertain to liquidated damages is **DENIED**.

4. **CLAIM SEVEN—SECTION 17200.**

California's Unfair Competition Law prohibits unfair competition, broadly defined as "any unlawful, unfair or fraudulent business act or practice . . . ." Cal. Bus. & Prof. Code § 17200. "By proscribing any unlawful business practice, section 17200 borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20

17

Cal.4th 163, 180 (1999) (cleaned up). The remedies available to a private plaintiff under Section 17200, as opposed to a district attorney or city or county counsel, "are generally limited to injunctive relief and restitution." *Id.* at 179.

Former employees cannot seek injunctive relief against their previous employer because they cannot show that they face a "'real or immediate threat of irreparable injury' by [defendant]'s employment practices." *Milligan v. Am. Airlines, Inc.*, 327 F.App'x 694, 696 (9th Cir. 2009). In the first amended complaint, plaintiff sought injunctive relief for defendant's alleged violations of Section 17200 (Dkt. No. 41 at ¶ 71). Plaintiff cannot seek injunctive relief as to any of his claims, not just rest-and-meal-break violations since he is no longer defendant's employee. Plaintiff has since conceded he cannot seek injunctive relief (Dkt. No. 58 at 1, fn. 1).

Nor can plaintiff seek restitution.

> Restitution under Business and Professions Code section 17203 is confined to restoration of any interest in money or property, real or personal, which may have been acquired by means of such unfair competition. A restitution order against a defendant thus requires both that money or property have been lost by a plaintiff, on the one hand, and that it have been acquired by a defendant, on the other. Compensatory damages are not recoverable as restitution.

*Zhang v. Superior Court*, 57 Cal.4th 364, 371 (2013) (citations omitted). Defendant has deprived plaintiff of neither money nor property since plaintiff is not owed break premiums. Plaintiff has also conceded that he cannot pursue Section 17200 claims should the applicable underlying claims be summarily adjudicated (Dkt. No. 58 at 1, fn. 1). Since the underlying rest-and-meal-break violation claim fails, so must plaintiff's seventh cause of action for violations of the Business and Professions Code Sections 17200, *et seq.*, as it pertains to rest-and-meal-break violations. Therefore, to the extent stated above, defendant's motion for partial summary judgment as to plaintiff's seventh claim is **GRANTED**.

5. **CLAIM EIGHT—PAGA VIOLATIONS.**

Plaintiff asserts that even if his substantive claim concerning rest-and-meal-break violations fail, he can still bring a PAGA claim under California Labor Code Section 2698 for

18

such violations on behalf of all other employees. Our court of appeals recently ruled, however, that unless the plaintiff experienced the injury himself, he lacks Article III standing to bring a PAGA claim based on those violations. *See Magadia v. Wal-Mart Associates, Inc.*, 999 F.3d 668, 674 (9th Cir. 2021). The lawsuit in *Magadia* was originally filed in state court and removed to federal court. Here, plaintiff originally filed this suit in state court, and plaintiff has failed to show injury due to rest- or meal-break violations. Thus, plaintiff lacks Article III standing to bring the PAGA claims in federal court.

Plaintiff has argued that if he lacks standing to bring the claim in federal court, in light of this recent ruling, then the PAGA claim should be remanded to state court. In *Magadia*, our court of appeals ordered the district court to remand the PAGA claim for which the plaintiff did not personally suffer the violation. *Ibid.* However, in *Magadia*, all the other claims had been summarily adjudicated or resolved in a bench trial by the district court before reaching the court of appeals. Here, several claims still remain unadjudicated. Plaintiff has cited no authority that a single claim in a controversy can be remanded while the other claims remain in federal court. Since plaintiff could bring this claim in state court, we will hold it in abeyance. Thus, defendant's motion for partial summary judgment on plaintiff's eighth claim as it pertains to rest-and-meal-break violations is **DENIED**, for after the other claims have been fully adjudicated, this claim will be remanded to the Superior Court of California, Alameda County.

**CONCLUSION**

To the foregoing extent, defendant's motion for partial summary judgment for claim seven, as it relates to rest-and-meal-break violations, and the entirety of claims four through six is **GRANTED**. Summary judgment is not appropriate on the issue of liquidated damages at this time, so the motion as to claims one and two is **DENIED**. As to the eighth claim, the motion is **DENIED**, for the claim, as it applies to rest-and-meal-break violations, is to be held in abeyance.

19

**IT IS SO ORDERED.**

Dated: July 2, 2021

_____
WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE