UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOHN ORNELAS,

        Plaintiff,

    v.

TAPESTRY, INC.,

        Defendant.

No.  C 18-06453 WHA

**ORDER CERTIFYING CLASS**

## INTRODUCTION

In this wage-and-hour action, plaintiff seeks to certify a class of current and former non-exempt California employees of defendant's high-end retail clothing stores for claims of unpaid wages and overtime arising out of defendant's employee security check policy.  This order finds that plaintiff has met his burden to show that common questions will predominate in adjudicating the class' claims for unpaid minimum wages and overtime incurred as a result of defendant's security check policy.  Therefore, the class will be **CERTIFIED**.  Because a previous order granted summary judgment in favor of defendant on the other labor code claims, certification is limited to the claims for unpaid wages and overtime.  Therefore, the motion as to those proposed subclasses is **DENIED**.

## STATEMENT

Defendant Tapestry, Inc., is a multinational luxury fashion holding company and the parent company of Coach New York, Kate Spade New York, and Stuart Weitzman (Dkt. No.

41 at ¶ 10).  Plaintiff John Ornelas worked for defendant as a non-exempt, hourly sales associate at defendant's Stuart Weitzman retail stores in Canoga Park and Beverly Hills, California, from April 2016 to June 2018 (*id.* at ¶ 15).

In September 2018, plaintiff filed this lawsuit in Alameda County Superior Court.  The complaint has alleged that defendant did not pay plaintiff for time he spent undergoing a security inspection before exiting the store, which defendant imposed as part of its loss prevention policy.  In addition, plaintiff alleged the employee security check policy interfered with plaintiff's ability to take meal and rest breaks.  Defendant removed the action here.

Plaintiff filed the instant motion for class certification on April 16, noticing a hearing date for July 15.  On May 12, defendant moved for partial summary judgment on most of the claims, noticing a hearing date for June 17.  After the hearing on defendant's motion for summary judgment, an order granted summary judgment for defendant on the rest-and-meal-break claims and derivative penalties claims leaving only the claims for unpaid minimum wage and overtime (Dkt. No. 65).  Therefore, this order will only consider class certification as to those claims.

Plaintiff now moves to certify the following class and subclass:

> [A] class of all current and former non-exempt retail store employees employed by Defendant Tapestry, Inc. d/b/a Stuart Weitzman ("Defendant") in the State of California, who were required to go through a security checkpoint during a meal period, rest break, and/or at the end of a shift during the period from September 4, 2014 to the present.

> Security Checkpoint – Minimum Wage and Overtime Subclass: All current and former non-exempt retail store employees who were employed by Defendant in the State of California at any time from September 4, 2014, through the present, who were required to go through a security checkpoint at the end of a shift, or while otherwise off the clock.

(Dkt. No. 56 at 1–2).  For the reasons that follow, this order will **CERTIFY** the following class:

> All current and former non-exempt retail store employees employed by defendant Tapestry, Inc., at a Stuart Weitzman store in California from September 4, 2014 through the date of this order.

This order follows full briefing and a hearing.

**ANALYSIS**

Rule 23(a) requires that all class actions meet four prerequisites:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Additionally, at least one of the three conditions of Rule 23(b) must be satisfied. Here, plaintiff moves to certify under Rule 23(b)(3), which requires him to show that:

> the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Before certifying a class, a court must conduct a "rigorous analysis" to determine that the requirements of Rule 23(a) are met and that the class fits within Rule 23(b). *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982). "Frequently that rigorous analysis will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped. The class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011) (cleaned up).

**1.    THE UNPAID MINIMUM WAGE AND OVERTIME CLAIMS.**

As stated, a previous order granted summary judgment in favor of defendant on all but the claims for unpaid minimum wage and overtime, so this order will only consider class certification as to those claims.

"The Industrial Welfare Commission (IWC) is the state agency empowered to formulate regulations (known as wage orders) governing employment in the State of California." *Morillion v. Royal Packaging Co.*, 22 Cal. 4th 575, 581 (2000). "IWC has promulgated 15

3

1  industry and occupation wage orders—12 orders cover specific industries and 3 orders cover

2  occupations—and 1 general minimum wage order which applies to all California employers

3  and employees (excluding public employees and outside salesmen)." *Ibid.* (cleaned up).

4      "Wage Order 7 covers all persons employed in the mercantile industry." *Frlekin v.*

5  *Apple Inc.*, 8 Cal. 5th 1038, 1046, n. 3 (2020) (*citing* Cal. Code Regs., tit. 8, § 11070, subd. 1).

6  Wage Order 7 requires employers to pay their employees "not less than the applicable

7  minimum wage for all hours worked in the payroll period." Cal. Code Regs., tit. 8, § 11070,

8  subd. 4(B). "'Hours worked' means the time during which an employee is subject to the

9  control of an employer, and includes all the time the employee is suffered or permitted to work,

10  whether or not required to do so." *Id.* subd. 2(G).

11      Time spent by an employee "on the employer's premises waiting for, and undergoing,

12  required exit searches of packages, bags, or [jackets] voluntarily brought to work for personal

13  convenience by employees" is compensable time under the control clause of Wage Order 7.

14  *Frlekin*, 8 Cal. 5th at 1042.  The rule established by *Frlekin* applies retroactively.  *Id.* at 1057.

15      Thus, to prevail on his claim for unpaid minimum wages for time spent undergoing

16  security checks, plaintiff must show that defendant had actual or constructive knowledge that

17  plaintiff went through the security checks while off the clock.  *See Morillion v. Royal Packing*

18  *Co.*, 22 Cal. 4th 575, 585 (2000).

19      In addition, Section 510(a) of California's Labor Code requires an employer to pay an

20  employee no less than one and one-half times the employee's regular rate of pay for "[a]ny

21  work in excess of eight hours in one workday and any work in excess of 40 hours in any one

22  workweek . . . ."  Thus, to prevail on his claim for unpaid overtime premiums, plaintiff must

23  show that defendant had actual or constructive knowledge that plaintiff worked more than

24  eight hours in one workday or 40 hours in one workweek and defendant failed to pay plaintiff

25  the required overtime premium for that work.  *See Troester v. Starbucks Corp.*, 5 Cal. 5th 829,

26  840 (2018).

27      With this understanding of the nature of plaintiff's claims in mind, this order now turns to

28  the requirements for class certification.

### 2.   NUMEROSITY.

The class must be so numerous that joinder of all members individually is "impracticable." FRCP 23(a)(1). Here, plaintiff estimates that the total number of defendant's current and former non-exempt retail store employees potential class members is 186. Numerosity is satisfied.

While Rule 23 does not explicitly require it, as a practical matter, the class must be clearly ascertainable. *See Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 679–80 (S.D. Cal. 1999) (Judge Rudi M. Brewster). A class is sufficiently defined and ascertainable if it is administratively feasible "to determine whether a particular individual is a member." *O'Connor v. Boeing North American, Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998) (Judge Audrey B. Collins).

Plaintiff's proposed class and subclass definitions are circular because they require determining that an individual has a meritorious claim *before* determining that the individual is a member of the class:

> [A] class of all current and former non-exempt retail store employees employed by Defendant Tapestry, Inc. d/b/a Stuart Weitzman ("Defendant") in the State of California, **who were required to go through a security checkpoint during a meal period, rest break, and/or at the end of a shift during the period** from September 4, 2014 to the present.

> Security Checkpoint – Minimum Wage and Overtime Subclass: All current and former non-exempt retail store employees who were employed by Defendant in the State of California at any time from September 4, 2014, through the present, **who were required to go through a security checkpoint at the end of a shift, or while otherwise off the clock**.

(Dkt. No. 56 at 1–2 (emphasis added)). The proposed definitions necessitate identifying which putative class members have been injured as a result of the allegedly unlawful practice at issue in order to determine whether they are in or out of the class. This makes the class unascertainable. Additionally, a previous order has summarily adjudicated many of plaintiff's claims, thus eliminating the viability of all but one subclass. As only one relevant subclass remains, this order finds there is no need for subclasses.

In light of these points, the revised class definition is:

> All current and former non-exempt retail store employees employed by defendant Tapestry, Inc., at a Stuart Weitzman store in California from September 4, 2014 through the date of this order.

### 3. COMMONALITY.

FRCP 23(a)(2) requires that there "are questions of law or fact common to the class." "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury. This does not mean merely that they have all suffered a violation of the same provision of law." *Wal-Mart*, 564 U.S. at 349–50 (cleaned up). Instead, the named plaintiff must show that the class members' claims "depend upon a common contention . . . . That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350.

Here, at all material times, defendant's manager's manual and operations manual both have provided: "*To deter internal theft*: . . . [¶] Bag and coat checks must be performed on all employees when leaving the store for a break, or at the end of their shift" (Dkt. No. 56-1 at 273, 335). In addition, the manager's manual has provided the following store-closing procedures (*id.* at 271):

**Arming the Alarm at Closing**

The key holder is responsible for setting the alarm system nightly, following these steps:

1. Check that all doors are closed and locked.

2. After bag checks are performed, all employees should remain at the front of the store while the key holder sets the alarm.

3. Set the alarm.

4. All employees must exit the store together.

5. After locking the door, gently pull the door to ensure it's locked.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   Under *Frlekin*, the time the employees spent undergoing the bag and coat checks and

2 waiting for the alarm to be set before exiting the store at closing was compensable hours

3 worked. *See Frlekin*, 8 Cal. 5th at 1056. Thus, the common question central to the validity of

4 each of the class members' claims is: Did the class members undergo a bag and coat check

5 while off the clock?

6   Defendant trains most of its fire on the predominance requirement so this order will

7 address those arguments below. Commonality is satisfied.

8   **4. TYPICALITY.**

9   To satisfy typicality, plaintiff must show that the "the claims or defenses of the

10 representative parties are typical of the claims or defenses of the class." FRCP 23(a)(3). "The

11 test of typicality is whether other members have the same or similar injury, whether the action

12 is based on conduct which is not unique to the named plaintiffs, and whether other class

13 members have been injured by the same course of conduct." *Wolin v. Jaguar Land Rover N.*

14 *Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010).

15   Here, plaintiff's claims are typical of the class since they arise out of defendant's uniform

16 employee security check policies which has applied to all class members throughout the class

17 period. Defendant does not argue that it has unique defenses to certain class members or that

18 plaintiff's claims are atypical of the class. Typicality is satisfied.

19   **5. ADEQUACY OF REPRESENTATION.**

20   The class representative must "fairly and adequately protect the interests of the class."

21 FRCP 23(a)(4). The named plaintiff "must appear able to prosecute the action vigorously

22 through qualified counsel, and . . . must not have antagonistic or conflicting interests with the

23 unnamed members of the class." *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512

24 (9th Cir. 1978). Plaintiff shares common interests with the defined class and has declared that

25 he is willing to take the necessary steps to prosecute the action (Ornelas Decl. ¶ 2; Dkt. No. 56

26 at 18). Plaintiff also asserts that he has no conflicting interests with the class members (*ibid.*),

27 and this order finds none.

28

Plaintiff's counsel have submitted several declarations stating they are experienced class action litigators who are adequate and will continue to vigorously prosecute this action on behalf of the class (Boyamian Decl. at ¶¶ 2–7; Kizirian Decl. at ¶¶ 2–6; Falvey Decl. at ¶¶ 2–9). Defendant does not argue that plaintiff and plaintiff's counsel would be inadequate representatives. Adequacy of representation is satisfied.

### 6. RULE 23(b)(3) PREDOMINANCE AND SUPERIORITY.

Plaintiff moves to certify the class under Rule 23(b)(3), so he must show that

> the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

#### A. PREDOMINANCE.

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). "This analysis presumes that the existence of common issues of fact or law have been established pursuant to Rule 23(a)(2)" and focuses on "the relationship between the common and individual issues." *Hanlon*, 150 F.3d at 1022.

The plaintiff bears the burden of proof to show by a preponderance of evidence that common questions predominate over individual ones. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 993 F.3d 774, 784 (9th Cir. 2021).

Here, defendant makes three arguments as to why individual issues would predominate. *First*, defendant argues that the bag-and-coat-check policy did not *require* the checks to be done off-the-clock and, to the contrary, defendant strictly prohibited off-the-clock work. Those points go to the merits, not whether the claims can be tried on a class basis. Again, at all material times, defendant had a uniform written policy requiring bag and coat checks for "all employees when leaving the store for a break, or at the end of their shift" (Dkt. No. 56-1 at 273). The policy applied to all class members. Thus, that the policy was silent as to whether the checks were done on or off-the-clock goes to whether the employees did in fact go through a security check off-the-clock, *i.e.*, it goes to the merits. Similarly, defendant's policy strictly

1   prohibiting all off-the-clock work is not particularly relevant given defendant's

2   acknowledgement that, notwithstanding that policy, class members did at least sometimes go

3   through security checks off-the-clock.  Moreover, it is understandable that defendant would not

4   construe its policy prohibiting off-the-clock work by its employees to apply to time spent

5   undergoing bag and coat checks given that until *Frlekin* was decided last year, it was not clear

6   that such time constituted hours worked under the labor laws.

7        *Second*, defendant provides several individual employee declarations to the effect that the

8   bag and coat check policy was not uniformly administered.  Sometimes the employees went

9   through the security checks on-the-clock, sometimes the employees did not go through the

10   security checks at all, and some managers at some store locations did not require the checks.

11   Moreover, even when the checks were done, the amount of time varied.  Importantly, however,

12   of the 21 declarations from individual employees submitted by the parties, all the employees

13   but one specifically stated they went through at least one bag and coat check while off-the-

14   clock.

15        This order finds that the variations described above do not defeat predominance.

16   Defendant does not argue that it did not have constructive knowledge that the class members

17   sometimes went through mandatory security checks off-the-clock.  Under *Frlekin*, that time

18   constituted compensable hours worked.  Thus, the variations defendant points to go to

19   *damages*, not liability.  "In this circuit, however, damage calculations alone cannot defeat

20   certification."  *Leyva v. Medline Industries Inc.*, 716 F.3d 510, 513 (9th Cir. 2013) (citation

21   omitted).  Moreover, the variabilities between class members in terms of the frequency of the

22   security checks, the amount of time spent in the security checks, and how often the employees

23   underwent the security checks off-the-clock can be resolved pursuant to a claims process,

24   detailed below.

25        *Third*, defendant argues that individualized proof will be needed to address its defense

26   that any unpaid time spent in the security screening was *de minimis* and, therefore, not

27   compensable.  The *de minimis* principle is a federal rule, generally holding that employees

28   cannot recover for otherwise compensable time if it is *de minimis*.  *See Lindow v. United*

*States*, 738 F.2d 1057, 1062 (9th Cir. 1984).  In *Troester v. Starbucks Corp.*, the California

Supreme Court held that the federal *de minimis* rule does not apply to claims for unpaid wages

under California law.  5 Cal. 5th 829, 848 (2018).  *Troester* left "open whether there are wage

claims involving employee activities that are so irregular or brief in duration that employers

may not be reasonably required to compensate employees for the time spent on them."  *Ibid.*

    This order finds that defendant's assertion of the *de minimis* defense does not defeat

predominance.  *One*, defendant cites no binding authority for the proposition that an as-of-yet

unrecognized California labor law *de minimis* defense would apply to the time at issue here.

Defendant's bag and coat check policy specifically stated that the "checks must be performed

on all employees when leaving the store for a break, or at the end of their shift" (Dkt. No. 56-1

at 273).  *Troester* stated:  "An employer that requires its employees to work minutes off the

clock on a regular basis or as a regular feature of the job may not evade the obligation to

compensate the employee for that time by invoking the de minimis doctrine."  *Id.* at 847.

Thus, the question of whether the *de minimis* defense is even applicable is a common and

predominating one that can be litigated on a class-wide basis.  *See, e.g., Rodriguez v. Nike

Retail Services, Inc.*, 2016 WL 8729923, at *10 (N.D. Cal. Aug. 19, 2016) (Judge Beth Labson

Freeman); *Hubbs v. Big Lots Stores, Inc.*, 2017 WL 2304754, at *9 (C.D. Cal. May 23, 2017)

(Judge John A. Kronstadt).

    *Two*, defendant asserts the *de minimis* defense based on the same variabilities in the

security checks rejected above.  Namely, defendant asserts that some employees rarely went

through the security checks and the time spent in the security checks was as little as two or

three seconds sometimes.  Therefore, defendant argues, assessing whether the checks were so

brief or irregular as to be *de minimis* requires individual proof.

    In the event that defendant loses on the merits, it will be necessary to litigate the issue of

who actually stood in line and for how long.  This would be pursuant to a claims process, after

yet another class notice, wherein class members would certify under oath the extent to which,

if at all, they underwent a security check off-the-clock.  Claimants would, of course, be subject

to cross-examination and counter-proof offered by defendant.  The Court is prepared, if the

10

United States District Court
Northern District of California

Seventh Amendment so requires, to give defendant its day in court before a jury, trying contested claims before one or more juries. The absence of good records to document the compensable time involved would be defendant's fault, meaning its own fault for failing to keep adequate records. Defendant should not be allowed to prevent class certification due to a record-keeping problem of its own making. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 688 (1946) (*superseded on other ground by statute*, Portal-to-Portal Act of 1947, 61 Stat. 86, *as recognized in Integrity Staffing Solutions, Inc. v. Busk*, 574 U.S. 27 (2014)).

Therefore, this order finds that questions of law or fact common to class members predominate over any questions affecting only individual members.

### B. SUPERIORITY.

"Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). When considering whether class action is superior, a district court must determine whether "efficiency and economy" would be advanced by class treatment. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001). "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action . . . . A class action solves this problem by aggregating the relatively paltry potential recoveries . . . ." *Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997).

Here, the fact of the relatively small recoveries for each class member weighs in favor of aggregating the claims. This order finds that trying the class members' claims for unpaid minimum wages due to defendant's security check policy on a class basis, as opposed to employee-by-employee, would advance efficiency and economy.

### CONCLUSION

For the foregoing reasons, the following class is CERTIFIED:

> All current and former non-exempt retail store employees employed by defendant Tapestry, Inc., at a Stuart Weitzman store in California from September 4, 2014 through the date of this order.

Certification is limited to the claims for unpaid minimum wage and overtime.  The balance of the motion is **DENIED**.

      Plaintiff John Ornelas is **APPOINTED CLASS REPRESENTATIVE**.

      Boyamian Law, Inc., and The Law Offices of Thomas W. Falvey are **APPOINTED CLASS COUNSEL**.

      The parties shall file a joint proposed form of class notice that conforms to Rule 23(c)(2)(B), together with a plan and proposed order for the distribution of notice and timeline for opt out **WITHIN TWO WEEKS OF THIS ORDER**.

      **IT IS SO ORDERED.**

Dated:  August 6, 2021

_____
WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE