**BOYAMIAN LAW, INC.**
MICHAEL H. BOYAMIAN, SBN 256107
ARMAND R. KIZIRIAN, SBN 293992
550 North Brand Boulevard, Suite 1500
Glendale, California 91203
Telephone:   (818) 547-5300
Facsimile:   (818) 547-5678
E-mail:         michael@boyamianlaw.com,
                    armand@boyamianlaw.com

**LAW OFFICES OF THOMAS W. FALVEY**
THOMAS W. FALVEY, SBN 65744
550 North Brand Boulevard, Suite 1500
Glendale, California 91203
Telephone:   (818) 547-5200
Facsimile:   (818) 500-9307
E-mail         thomaswfalvey@gmail.com

Attorneys for Plaintiff John Ornelas,
Individually and On Behalf
of the Certified Class

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN ORNELAS, individually and on behalf of all others similarly situated,<br><br>                              Plaintiffs,<br><br>        v.<br><br>TAPESTRY, INC., a Maryland Corporation; and DOES 1 through 25, inclusive,<br><br>                              Defendants. | Case No. 3:18-cv-06453-WHA<br><br>**CLASS ACTION**<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>*[Filed Concurrently with the Declaration of Armand R. Kizirian and [Proposed] Order]*<br><br>Judge:     Hon. William Alsup<br><br>Date:     December 16, 2021<br>Time:     11:00 a.m.<br>Crtrm:    12, Nineteenth Floor |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on December 16, 2021, at 11:00 a.m. or as soon thereafter as the matter may be heard by the Honorable William Alsup in Courtroom 12 of the above-entitled court located at 450 Golden Gate Avenue, San Francisco, California 94102 in Courtroom 12 on the Nineteenth Floor, Plaintiff John Ornelas ("Plaintiff"), on behalf of himself and the certified class, will and hereby does move this Court for an Order that:

(1)   Grants preliminary approval of the Settlement reached in this matter, including the Gross Settlement Amount of $342,500;

(2)   Approves as to form the Notice of Class Action Settlement ("Class Notice") and orders that the Class Notice be distributed to the members of the Settlement Classes;

(3)   Appoints Simpluris, Inc. as the Settlement Administrator;

(4)   Sets this matter for a hearing on the issues of the final approval of this class action settlement for March 3, 2022 at 11:00 a.m. in Courtroom 12 of the above-entitled court located at 450 Golden Gate Avenue, San Francisco, California 94102; and

(5)   Grants all other and further relief that the Court deems just and proper.

Plaintiff's Motion is based on this Notice and the accompanying Memorandum of Points and Authorities and exhibits thereto; the Declaration of Armand R. Kizirian, and the respective exhibits thereto; the Proposed Order; this Court's files and records; and any other evidence, briefing, or argument properly before this Court.

///
///
///
///
///
///

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:18-cv-06453-WHA

Pursuant to the Court's October 22, 2021 Order, Plaintiff notices this Motion for hearing at 11:00 a.m. on Thursday, December 16, 2021, rather than at the Court's typical motion hearing time of 8:30 a.m.  *See* Dkt. No. 78.

Defendant does not oppose this motion.

Dated:  November 10, 2021

**BOYAMIAN LAW, INC.**
**LAW OFFICES OF THOMAS W. FALVEY**


By:  _____/s/ Armand R. Kizirian_____
Armand R. Kizirian
Attorneys for Plaintiff John Ornelas,
Individually and on Behalf of All Others
Similarly Situated

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:18-cv-06453-WHA

# **Table of Contents**

I.      INTRODUCTION ....................................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND ..............................................2

III.    TERMS OF THE SETTLEMENT .........................................................................6

    A.    Class Definition ..........................................................................................6

    B.    Settlement Amount .....................................................................................6

    C.    Allocation of Payments and Distribution to Class Members......................6

    D.    Attorneys' Fees and Costs..........................................................................7

    E.    Costs of Settlement Administration ...........................................................7

    F.    Administration of Notice and Opt-Out Process .........................................7

    G.    Disputes, Requests for Exclusion, and Objections ....................................7

    H.    Release of Claims ......................................................................................8

    I.    Individual Settlement of Plaintiff's Claims ..............................................8

IV.     ARGUMENT ........................................................................................................9

    A.    Preliminary Approval of the Settlement is Appropriate.............................9

        1.    The Settlement is the Product of Informed, Non-Collusion Negotiation. ...9

        2.    The Strength of Plaintiff's Case and Defendant's Defenses, and the Risk of Further Litigation Support Preliminary Approval. ...............................10

        3.    Given the Probable Maximum Amount of Potential Damages, the Settlement Falls Within the Range of Reasonableness. ...........................12

        4.    Plaintiff's Request for Attorneys' Fees and Costs Will Be Made During the Settlement Notice Period. .................................................................18

        5.    Plaintiff's Individual Settlement with Defendant is Reasonable. .............18

        6.    The Amount Allocated for Settlement Administration is Reasonable. ......19

V.      THE PROPOSED CLASS NOTICE IS APPROPRIATE .................................20

VI.     CONCLUSION...................................................................................................21

# **Table of Authorities**

**CASES**

*Officers for Justice v. Civil Service Commission of City and County of San Francisco*,
    688 F.2d 615 (9th Cir. 1982) ............................................................... 9, 12

*Amaral v. Cintas Corp. No. 2*,
    163 Cal.App.4th 1157 (2008) ............................................................... 14

*Bernstein v. Virgin Am., Inc.*,
    990 F.3d 1157 (9th Cir. 2021) ............................................................. 14

*Drumm v. Morningstar, Inc.*,
    695 F. Supp. 2d 1014 (N.D. Cal. 2010) ............................................. 17

*Fischel v. Equitable Life Assur. Soc'y of U.S.*,
    307 F.3d 997 (9th Cir. 2002) ............................................................... 17

*Frlekin v. Apple*,
    8 Cal. 5th 1038 (2020) ........................................................... 1, 3, 16, 17

*Harris v. Vector Mktg. Corp.*,
    2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) .................................... 9

*In re Larry's Apartment, L.L.C.*,
    249 F.3d 832 (9th Cir. 2001) ............................................................... 17

*In re Tableware Antitrust Litig.*,
    484 F.Supp.2d 1078 (N.D. Cal. 2007) ............................................ 9, 12

*Magadia v. Wal-Mart Assocs., Inc.*,
    384 F. Supp. 3d 1058 (N.D. Cal. 2019) .............................................. 15

*Marlo v. United Parcel Serv., Inc.*,
    251 F.R.D. 476 (C.D. Cal. 2008) ......................................................... 12

*O'Connor v. Uber Techs., Inc.*,
    201 F. Supp. 3d 1110 (N.D. Cal. 2016) ............................................... 16

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ............................................................... 20

*Smith v. Lux Retail N. Am., Inc.*,
    2013 WL 2932243 (N.D. Cal. June 13, 2013) .................................... 14

*Troester v. Starbucks Corp.*,
    5 Cal. 5th 829 (2018) ........................................................................... 11

*Viceral v. Mistras Grp., Inc.*,
    2016 WL 5907869 (N.D. Cal. Oct. 11, 2016) .................................... 16

*Villegas v. J.P. Morgan Chase & Co.*,
    2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ................................. 9, 13

STATUTES

Labor Code Section 1194.2.......................................................................... 5, 13, 16

Labor Code Section 558.................................................................................... 14

Labor Code Sections 218.5 ................................................................................ 5

Labor Code Section 2699........................................................................... 5, 15

**FEDERAL RULES OF CIVIL PROCEDURE**

Rule 23 ............................................................................................... 2, 16, 20, 21

Rule 30(b)(6).......................................................................................................... 2

**OTHER AUTHORITIES**

Manual for Complex Litigation, Third (Fed. Judicial Center 1995) ("Complex Manual"), § 30.211....20

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:18-cv-06453-WHA

## MEMORANDUM OF POINTS AND AUTHORITIES

# I.    INTRODUCTION

Plaintiff John Ornelas ("Plaintiff") seeks preliminary approval of a settlement with Defendant Tapestry, Inc. ("Defendant") (Plaintiff and Defendant together as the "Parties").  Subject to preliminary and final approval by this Court, the Parties have agreed to settle this action for a non-reversionary amount of $342,500.  This settlement encompasses all of the certified Class's claims, which encompass all current and former non-exempt retail store employees employed by Defendant at a Stuart Weitzman store in California from September 4, 2014 through August 6, 2021.

Plaintiff alleges that he and the certified class, non-exempt employees of Defendant, were not compensated for time spent undergoing security inspections when leaving California Stuart Weitzman retail locations during the class period in contravention of state law as set forth in *Frlekin v. Apple*, 8 Cal. 5th 1038 (2020).

This Settlement should be approved by the Court because it is an excellent result for the Class given Defendant's defenses to this action and the amount offered in settlement.  Specifically, this settlement avoids the risk that Tapestry could successfully mount a *de minimis* defense at trial, and avoids the risk of decertification of the Class should a class-action trial prove to be unworkable given the nature of the claims and the number of witnesses that would be involved.

In addition, Defendant vigorously contests that its security check policy resulted in any off the clock work.  Plaintiff expects Defendant to argue that its company-wide policy required all non-exempt employees, including Class Members, to be clocked in while working, including during security inspections.

Moreover, to the extent Class Members did work off the clock, and to the extent Defendant is not able to defeat such claims through a *de minimis* defense, Plaintiff believes that such amounts are ultimately relatively modest.  This is so because in absolute terms, even if it can be shown that the average class member was spending several minutes waiting off the clock per week for a security inspection throughout the

1

class period, with only about 186 Class Members, the underlying damages will fall within the five-figure range, as set forth in greater detail below.  For all of these reasons then, the Settlement is a great result for Class Members.

In addition, this Settlement was the result of arms-length, non-collusive negotiations between the Parties with the assistance of Chief Magistrate Judge Joseph C. Spero.  Prior to settling the case, Plaintiff had extensively investigated the merits of this action, took the deposition of Defendant's Rule 30(b)(6) designated witnesses, defended the deposition of Plaintiff, engaged in extensive motion practice, calculated the damages owed to Class Members, and assessed their prospects at trial.  As a result, Plaintiff was fully informed as to what a fair settlement amount would be.

It is well within the discretion of this Court to grant preliminary of the proposed Settlement, which satisfies all of the criteria for preliminary settlement approval under Rule 23.  Accordingly, Plaintiffs request that the Court: (1) grant preliminary approval of the proposed Settlement for the certified Class; (2) direct distribution to the Class of the Notice, which provides the Class the opportunity to opt-out of or object to the Settlement; and (3) schedule a final approval hearing.

The Settlement Agreement, including all exhibits, is attached as Exhibit "1" to the Declaration of Armand R. Kizirian in Support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement ("Kizirian Decl."), filed herewith.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

This is a wage and hour class action concerning Defendant Tapestry, Inc.'s mandatory security check policy for its Stuart Weitzman retail store employees in California.  Plaintiff alleged that any time a class member exited a Stuart Weitzman store, that class member was required to undergo a security inspection.  If no manager or other employee was available to conduct that security check, the class member would have to wait until a manager or other employee became available to conduct the security check.  Kizirian Decl. ¶ 5.

///

Specifically, in order to protect Stuart Weitzman's property, Plaintiff contends that Defendant mandates that all of its retail employees submit to a "security check" before exiting the store at any time – whether at the end of a shift or during a break – regardless of whether they have a bag or not. Dkt. No. 56-1, pp. 28-31. Section 7.7 of Defendant's Manager's Manual provides under the section of "Theft," "*bag and coat check <u>must</u> be performed on all employees when leaving the store for a break, or at the end of their shift*." Dkt. No. 56-1, p. 273. Defendant's Operations Manual repeats this same directive verbatim. Dkt. No. 56-1, p. 335. Kizirian Decl. ¶ 6.

In other words, Plaintiff's position is that whenever a Class Member leaves the store, he or she must meet with the manager and undergo a visual inspection, which consists of the manager visually inspecting the Class Member, requesting the Class Member to show the inside of his or her coat or jacket, and observing the employee leaving the store – all to ensure that the employee does not have any concealed, unpaid merchandise. Dkt. No. 56-1, pp. 30-32. Further, when a Class Member brings a bag, the employee must also open his or her bag so the manager can conduct a visual inspection of the contents of the bag. Dkt. No. 56-1, pp. 25-26. Kizirian Decl. ¶ 7.

In Tapestry's own words, "[t]he expectation to have a security check is the same regardless of why someone's leaving." Dkt. No. 56-1, pp. 31. All security checks are to be performed at the point of exit, which is at the front entrance of each store. Tapestry's policies also caution class members that failure to adhere to its mandatory security check policy will result in corrective action, including termination. Dkt. No. 56-1, pp. 47-48, 362. Tapestry has not changed its off-the-clock security check policy and the same policy has been in place over the entire class period. Dkt. No. 56-1, pp. 23-24, 32. Kizirian Decl. ¶ 8.

Plaintiff asserts that none of this time was paid for by Defendant. Notably, this policy and practice was implemented by Defendant prior to the California Supreme Court's decision in *Frlekin v. Apple*, 8 Cal. 5th 1038 (2020), whereby California's high court clarified that time spent by employees waiting for and undergoing security checks

is time spent working and thus compensable under California law.  8 Cal. 5th at 1047.
Kizirian Decl. ¶ 9.

However, even before the California Supreme Court's clarification in *Frlekin v. Apple*, because Plaintiff believed that California law required that security checks be compensated by an employer, Plaintiff filed the instant suit.  Specifically, Plaintiff initiated his action on September 4, 2018 in Alameda County Superior Court on behalf of himself and all other Stuart Weitzman California retail employees, going back four years prior to the initiation of the action.  Once Tapestry was served, Defendant removed the suit to the Northern District of California on October 22, 2018.  Kizirian Decl. ¶ 10.

Plaintiffs initial Complaint included seven causes of action for: (1) Unpaid Wages; (2) Failure to Pay Minimum Wage; (3) Failure to Pay Overtime Compensation; (4) Failure to Provide Meal and Rest Periods; (5) Failure to Furnish Accurate Wage and Hour Statements; (6) Waiting Time Penalties; and (7) Unfair Competition.  The operative First Amended Complaint, filed on May 7, 2020, added a cause of action under (8) the Private Attorneys General Act.  Dkt. No. 41.  Kizirian Decl. ¶ 11.

On April 16, 2021, Plaintiff moved for class certification.  Dkt. No. 56.  However, on May 18, 2021, while class certification briefing was under way, Defendant filed a Motion for Partial Summary Judgment.  Dkt. No. 57.  Briefing for the Motion for Partial Summary Judgment was thereafter completed, a hearing held on June 17, 2021, and the motion granted on July 2, 2021, all while the Motion for Class Certification was still pending.  Dkt. No. 65.  Kizirian Decl. ¶ 12.

As a result of the order granting partial summary judgment, many of Plaintiff's claims were dismissed from the suit.  The Court found that Defendant met its meal and rest break obligations to Plaintiff, and thus adjudicated the fourth cause of action in full.  Dkt. No. 65, Order Granting MPSJ, p. 1.  Similarly, the Court found that Defendant's failure to compensate Plaintiff for the time he personally spent waiting for security checks was neither willful nor knowing and intentional because the *Frlekin v. Apple*

decision came out after Plaintiff had already left his employment with Defendant.  Thus, the Court dismissed Plaintiff's fifth and sixth causes of action for inaccurate wage statement penalties and waiting time penalties.  Order Granting MPSJ, p. 1.  Kizirian Decl. ¶ 13.

In effect then, after the Court's grant of partial summary judgment, looking through all of the surviving causes of action, what was left of Plaintiff's suit was the underlying unpaid wages claim for time spent waiting for security checks, Labor Code Section 1194.2 liquidated damages equivalent to those unpaid wages, associated PAGA penalties, and Plaintiff's ability to recover attorneys' fees and costs pursuant to Labor Code Sections 218.5, 1194, and 2699.  Kizirian Decl. ¶ 14.

Plaintiff's Motion for Class Certification was heard after the Court had granted Tapestry's Motion for Partial Summary Judgment.  On August 6, 2021, the Court certified all of Plaintiff's remaining claims, resulting in a class of approximately 186 individuals.  Dkt. No. 72.  Kizirian Decl. ¶ 15.

Soon thereafter, on September 7, 2021, the Parties attended a settlement conference with Chief Magistrate Judge Joseph C. Spero.  At the settlement conference, the Parties were able to reach a settlement of all of the certified class's claims, and also for a comprehensive release from Plaintiff.  Thereafter, the Parties negotiated and entered into a longform settlement agreement for the certified class's claims and a separate settlement agreement for a comprehensive release from the Plaintiff.  Kizirian Decl. ¶ 16.

Based on an independent investigation and evaluation, Plaintiff's Counsel are of the opinion that the Settlement with Defendant for the consideration and on the terms set forth in the Settlement Agreement is fair, reasonable, and adequate, and is in the best interests of Class Members, in light of all known facts and circumstances, including the risk that the Court will decertify the Class if the phased trial gets underway and proves unmanageable, that Defendant will successfully be able to mount a *de minimis* defense to the Class's claims, and the relatively modest amount of maximum damages available

to the class given the scope of the certified claims.  Kizirian Decl. ¶ 17.

## III.     TERMS OF THE SETTLEMENT

The complete details of the Settlement are contained in the Settlement Agreement, signed by the Parties, and attached as Exhibit "1" to the Kizirian Decl.  A summary of the settlement's primary terms are as follows:

### A. Class Definition

The Class is defined as all current and former non-exempt retail store employees employed by Defendant Tapestry, Inc., at a Stuart Weitzman store in California from September 4, 2014 through August 6, 2021.

### B.  Settlement Amount

Defendant has agreed to pay $342,500 on a non-reversionary basis to resolve the claims of the Class in this lawsuit.

### C. Allocation of Payments and Distribution to Class Members

This is not a claims-made settlement.  Class Members will receive a portion of the Net Settlement Amount as long as they do not opt out of the Settlement by submitting valid and timely Request for Exclusion to the Settlement Administrator, as set forth below and as explained in the Notice.

The Settlement Administrator will calculate the individual settlement awards to eligible Class Members.  Defendants will provide the workweeks worked or dates of employment from which the workweeks can be calculated for each Class Member during the Class Period to the Settlement Administrator.

In order to calculate each Class Member's share of the settlement, the Settlement Administrator will use the following formula:

The Net Settlement Amount will be divided by the aggregate total number of Workweeks, resulting in the "Workweek Value."  Each Class Member's "Individual Settlement Payment" will be calculated by multiplying each individual Class Member's total number of Workweeks by the Workweek Value.  If there are any valid and timely submitted Requests for Exclusion or Class Members whose Notice of Class Action

Settlement are returned as non-deliverable and for whom the Settlement Administrator is unable to determine a reliable address using reasonable and customary methods, the Settlement Administrator shall proportionately increase the Individual Settlement Payments for each Participating Class Member so that the amount actually distributed to Participating Class Members (or sent to the California State Controller's Office on their behalf) equals 100% of the Net Settlement Amount.

### D.  Attorneys' Fees and Costs

Class Counsel will seek an award of attorneys' fees and costs from the Gross Settlement Amount.  However, the Parties' Settlement Agreement contains no specific agreement on the amount of attorneys' fees and costs that Plaintiff will seek, in compliance with the Court's Notice and Order Re Putative Class Actions and Factors to be Evaluated for any Proposed Class Settlement.  *See* Dkt. No. 14, Paragraph 8.

### E.  Costs of Settlement Administration

The Settlement Administrator shall be entitled to payment, from the Gross Settlement Amount, for the reasonable costs of administering this settlement, up to a maximum of $20,000.

### F.  Administration of Notice and Opt-Out Process

This Settlement is not a claims-made settlement.  Class Members do not need to submit claims in order to participate in the Settlement.  The Notice, attached to the Settlement Agreement as Exhibit "A", shall be sent by the Settlement Administrator to the Class Members, by first class mail, within ten (10) calendar days following the transmittal of the relevant information from Defendant.  The Notice shall notify each Class Member of their number of workweeks within the Class Period and their estimated Individual Settlement Payment.

### G. Disputes, Requests for Exclusion, and Objections

The Notice shall provide thirty (30) days from the mailing date of the Notice for each Class Member to dispute the amount of a Class Member's number of workweeks during the Class Period or the calculation of an individual Class Member's Settlement

Payment.  In addition, Class Members shall have forty-five (45) days from the mailing date of the Notice to opt out of the Settlement or object to the settlement.

### H. Release of Claims

Plaintiff and all Participating Class Members (including any assigned agents/representatives) shall, for the Released Claims Period, fully and finally waive, release, and forever discharge the Released Parties from any and all claims for unpaid minimum wages and overtime, including those concerning Defendant's practices regarding package inspections ("Released Claims").  The Released Claims include any claims, rights, demands, liabilities, and causes of action of any kind or nature in law or in equity, under any theory, of any jurisdiction, foreign or domestic, whether known or unknown, anticipated or unanticipated, for failure to pay wages for time allegedly worked in violation of Sections 216 and 1194 and related sections of the California Labor Code and the IWC Wage Orders, failure to pay overtime wages in violation of Sections 510 and 1194 and related sections of the California Labor Code and the IWC Wage Orders, and for damages, restitution, penalties, interest, costs, attorneys' fees, expenses, equitable relief, injunctive relief, and any other relief premised on the alleged minimum wage and overtime pay violations.

### I.  Individual Settlement of Plaintiff's Claims

In addition to the Class Action Settlement Agreement, Plaintiff and Defendant have entered into an Individual Settlement Agreement in order for Plaintiff to provide a comprehensive release to Tapestry, above and beyond what is released through the Class Action Settlement Agreement.

In exchange for this comprehensive release, Defendant has agreed to compensate Plaintiff $7,500.  The complete Individual Settlement Agreement is attached as Exhibit "2" to the Kizirian Declaration.

///

///

///

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## IV.  ARGUMENT

### A. Preliminary Approval of the Settlement is Appropriate.

The dismissal or compromise of a class action requires court approval.  Fed. R. Civ. P. 23(e).  Approval involves a two-step process in which the Court first determines whether a proposed class action settlement warrants preliminary approval and, if so, directs that notice be sent to proposed class members, reserving closer scrutiny for the final approval hearing.  *See Harris v. Vector Mktg. Corp.*, 2011 WL 1627973, at *7-*8 (N.D. Cal. Apr. 29, 2011).  Approval of a class action settlement rests in the discretion of the Court, which should ultimately determine whether the settlement is fundamentally fair, adequate, and reasonable to the Class.  *See Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993).

A court should grant preliminary approval of a settlement if it "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval."  *See In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007).  Courts should also apply their discretion in light of the judicial policy favoring settlement of complex class action litigation.  *See, e.g., Officers for Justice v. Civil Service Commission of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) ("[I]t must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation. . .").  As discussed below, application of the relevant factors to this case supports preliminary approval.

### 1.  The Settlement is the Product of Informed, Non-Collusion Negotiation.

Adequate discovery and the use of an experienced mediator support the conclusion that settlement negotiations were informed and non-collusive.  *Villegas v. J.P. Morgan Chase & Co.*, 2012 WL 5878390 at *6 (N.D. Cal. Nov. 21, 2012).  Each side has apprised the other of their respective factual contentions, legal theories and

defenses, resulting in extensive arms-length negotiations taking place among the parties.

On September 7, 2021, the Parties attended a settlement conference with Chief Magistrate Judge Joseph C. Spero.  The Parties engaged in protracted negotiations and were only able to reach a figure for settlement late in the afternoon.  The Parties exchanged their settlement conference statements beforehand and Judge Spero gave a very candid take to Plaintiff during the settlement conference as to what he believed were the strengths and weaknesses of Plaintiff's case.  Judge Spero's input, as a neutral non-party with significant experience in assisting litigants resolve their disputes, helped Plaintiff understand that the offer Defendant was making to settle this suit was very credible and should be accepted.  Kizirian Decl. ¶ 18.

Moreover, the Settlement Agreement was reached through arm's-length negotiations by experienced counsel familiar with the applicable law, class action litigation, and the facts of this case.  Class Counsel have a great deal of experience in class action litigation and focus on employment wage and hour matters.  The parties engaged in a comprehensive exchange of information and each conducted an extensive investigation of the factual allegations involved in this case.  Kizirian Decl. ¶ 19.

In short, Plaintiff entered into this Settlement with a wealth of information as to the specifics of this case, significant background experience as wage and hour class action litigators, and having also considered the opinion of a neutral non-party who has substantial experience in dealing with such claims.  Kizirian Decl. ¶ 20.

### 2.  The Strength of Plaintiff's Case and Defendant's Defenses, and the Risk of Further Litigation Support Preliminary Approval.

The Court has certified a Class based upon Plaintiff's allegation that Tapestry required its non-exempt Stuart Weitzman employees to wait off the clock for security checks before exiting the company's California retail locations.  Plaintiff and the Class face a number of hurdles if they take this matter through to trial.  Kizirian Decl. ¶ 21.

First, Plaintiff anticipates that Defendant will argue that the time Plaintiff and Class Members spent waiting off the clock for security checks, to the extent it occurred,

10

1   was *de minimis*.  The California Supreme Court, while significantly curtailing the *de*

2   *minimis* defense through its ruling in *Troester v. Starbucks Corp.*, 5 Cal. 5th 829 (2018),

3   nevertheless did not foreclose on this defense completely.  Kizirian Decl. ¶ 22.

4         Specifically, in that matter, the California Supreme Court stated, "We decline to

5   decide whether a de minimis principle may ever apply to wage and hour claims given

6   the wide range of scenarios in which this issue arises."  *Id.* at 843.  Given that some

7   Class Members on some occasions were in fact waiting very brief moments of time

8   before a security check was conducted, might this be a case where the Court finds the *de*

9   *minimis* doctrine provides a complete or partial defense to the Class's wage and hour

10  claims?  Plaintiff believes there is certainly some risk of this possibility, and this risk

11  was considered by Plaintiff before entering into the instant settlement agreement.

12  Kizirian Decl. ¶ 23.

13        Moreover, in *Troester*, the California Supreme Court stated that, "An employer

14  that requires its employees to work minutes off the clock on a *regular* basis or as a

15  *regular* feature of the job may not evade the obligation to compensate the employee for

16  that time by invoking the de minimis doctrine."  *Id.* at 847 (emphasis added).  Here,

17  Plaintiff believes that there is some risk that the Court could conclude that even if the

18  time spent off the clock was not insubstantial, if it was occurring *irregularly*, the de

19  minimis doctrine may provide a defense to Tapestry.  For example, some of the time

20  spent off the clock by Plaintiff and Class Members was due to managers who were on

21  conference calls that went unexpectedly long.  In such circumstances, if it was a rare or

22  unusual instance in which an employee had to remain off the clock waiting for a

23  security inspection, Plaintiff believes that Defendant may be able to invoke the *de*

24  *minimis* doctrine to preclude liability.  Kizirian Decl. ¶ 24.

25        Next, Plaintiff anticipates that Defendant will argue that its wage and hour

26  policies prohibited Class Members from working off the clock and that, in practice,

27  Class Members did not spend time any appreciable amount of time working off the

28  clock, i.e., waiting for a security inspection.  Relatedly, Plaintiff anticipates that

Defendant will also argue that Tapestry had a practice whereby if a manager or co-worker was not available to conduct a security inspection, a Class Member could simply hold their bags open to a security camera and exit the store without violating company policy.  If proven, these practices would severely undercut Plaintiff's and the Class's claim to liability at trial.  Kizirian Decl. ¶ 25.

Moreover, while the Class is presently certified, nothing prevents Tapestry for moving for decertification, even during trial, if the trial proves unmanageable.  *See Marlo v. United Parcel Serv., Inc.*, 251 F.R.D. 476, 479 (C.D. Cal. 2008) ("The district court's order to grant class certification is subject to later modification, including class decertification.).  Kizirian Decl. ¶ 26.

Thus, even though the Class is presently certified and headed for a class action trial, there is a substantial risk that Defendant can get a full or partial defense verdict based upon the *de minimis* doctrine, or that the class gets decertified entirely once trial gets underway if the Court believes the trial is proving to be unmanageable.  Kizirian Decl. ¶ 27.

### 3.  Given the Probable Maximum Amount of Potential Damages, the Settlement Falls Within the Range of Reasonableness.

In deciding whether the proposed settlement is adequate and falls within the range of possible approval, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer", while taking into account the risks of continuing litigation.  *See In re Tableware Antitrust Litig.*, 484 F.Supp.2d at 1080. Courts should recognize that "the agreement reached normally embodies compromise; in exchange for the saving of cost and elimination of risk, the Parties each gave up something they might have won had they proceeded with litigation." *Officers for Justice*, 688 F.2d at 624, (internal quotations and citation omitted).  "[I]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair.  Rather, the fairness and the adequacy of the settlement should be assessed relative to risks of pursuing the litigation

to judgment." *Villegas*, 2012 WL 5878390 at *6 (internal quotations and citations omitted).

Here, the Settlement is fair, adequate, and well within the range of possible approval.  Without conceding that any adverse rulings would be justified, Plaintiffs recognize the risk of such outcomes as described above.  Kizirian Decl. ¶¶ 21-27.

Based upon the calculations of Plaintiff's Counsel, a class settlement of $342,500 is eminently reasonable given the maximum exposure Defendant faced in this action. Prior to attending the settlement conference with Judge Spero, Defendant provided Plaintiff with a spreadsheet showing the dates of employment of all Class Members. Kizirian Decl. ¶ 28.

Based upon that class data provided by Defendant, Plaintiff calculated that there were a total of 110,367 days within the Class Period, cumulatively for all Class Members.  While the data Plaintiff received did not distinguish between work and non-work days, by dividing this 110,367 figure by seven, Plaintiff nevertheless estimated that there are 15,767 workweeks within the Class Period, up to a few weeks prior to the settlement conference.  Kizirian Decl. ¶ 29.

Plaintiff estimated that the average hourly rate of class members was approximately $18 based upon Plaintiff's prior discovery and investigation in this matter.  If on a class basis, 10 minutes were spent off the clock waiting for security inspections to occur each workweek per Class Member, that comes out to $47,301 ($18 * 10 minutes [i.e. 0.333 hours] *15,767 workweeks).  If the class average turns out to be higher, e.g., 20 minutes per workweek, the equivalent figure comes out to $94,602.  On the other hand, if it turns out to be lower, e.g., 5 minutes per class member per workweek, the total falls to $23,650.50.  Clearly then, the underlying amount is not very large as far as class action litigation goes, even if some portion of this is likely to be deemed off-the-clock overtime, where a 1.5x pay rate would apply.  Kizirian Decl. ¶ 30.

Plaintiff's Labor Code Section 1194.2 claim also survived summary judgment. Pursuant to Labor Code Section 1194.2(a), if successful on an unpaid wages claims, "an

employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon". Thus, Plaintiff and the class will likely be awarded liquidated damages of $47,301 if trial shows that the average class member spent a couple of minutes each day waiting to undergo a security check (i.e., 10 minutes a workweek), as set forth above, with this figure proportionally increasing or decreasing based upon the underlying award of unpaid wages. Kizirian Decl. ¶ 31.

Plaintiff's PAGA claim related to the unpaid wages causes of action certified by the Court add to the potential recovery of the Class. However, the amount of PAGA damages at issue depends on whether this Court would permit the 'stacking' of PAGA penalties. *See Smith v. Lux Retail N. Am., Inc.*, No. C 13-01579 WHA, 2013 WL 2932243 at *3 (N.D. Cal. June 13, 2013) ("Another necessary but equally flawed assumption undergirding the Luxottica calculation is the stacking of penalties. For the single mistake of failing to include commissions in the overtime base, plaintiff has asserted *five* (count them, five) separate labor code violations that could lead to statutory penalties…. But is it plausible that we would really pile one penalty on another for a single substantive wrong?"). Kizirian Decl. ¶ 32.

If the Court did not permit stacking, then Plaintiff and the Class would be entitled to a maximum of a $50 penalty per pay period for an "initial violation" for unpaid wages pursuant to Labor Code Section 558(a)(1). Plaintiff would be limited to this "initial violation" amount, and not the $100 "subsequent violation" penalty called for in Labor Code § 558(a)(2), because "[u]nder California law, "[a] good faith dispute" that an employer is required to comply with a particular law "will preclude imposition" of heightened penalties." *Bernstein v. Virgin Am., Inc.*, 990 F.3d 1157, 1172-73 (9th Cir. 2021), *citing Amaral v. Cintas Corp. No. 2*, 163 Cal.App.4th 1157, 1201 (2008). Kizirian Decl. ¶ 33.

Plaintiff estimates that there are 66,046 total workdays for Class Members within the PAGA statutory period, based upon the data provided by Defendant. Dividing this figure by seven, Plaintiff therefore estimates there are about 9,435 PAGA workweeks,

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

which would result in approximately 4,718 PAGA pay periods based on a two week pay period.  Kizirian Decl. ¶ 34.

As such, if a $50 maximum penalty were applied to these 4,718 PAGA pay periods, then the maximum PAGA penalties at stake would be $235,900.  However, Plaintiff does not believe that, realistically, in this case, the Court would impose anywhere near maximum penalties.  Even if stacking were permitted, Plaintiff believes that would not make a material difference to the penalties that the Court would likely impose because the Court has "broad discretion to award PAGA penalties as the Court sees fit."  *Magadia v. Wal-Mart Assocs., Inc.*, 384 F. Supp. 3d 1058, 1100 (N.D. Cal. 2019), *reversed in part and vacated in part on other grounds*, 999 F.3d 668 (9th Cir. 2021); *see* Labor Code Section 2699(e)(2) ("…a court may award a lesser amount than the maximum civil penalty amount specified by this part if, based on the facts and circumstances of the particular case, to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory.").  Kizirian Decl. ¶ 35.

Here, in its Order Re Motion for Partial Summary Judgment, the Court has already concluded, albeit for Plaintiff on an individual basis, that a good faith dispute existed whether time spent waiting for a security check was compensable under California law at the time Plaintiff was employed by Defendant.  *See* Dkt. No. 65, pp. 13-15.  Moreover, the Court also concluded that a good faith dispute existed whether the *de minimis* doctrine would have precluded Plaintiff from recovering, even if Tapestry otherwise should have compensated Plaintiff for time spent waiting for a security check. Dkt. No. 65, pp. 16-17.  Additionally, in its Order Certifying Class, the Court explicitly found that the "question of whether the *de minimis* defense is even applicable is a common and predominating one that can be litigated on a class-wide basis."  Dkt. No. 72, p. 10.  Kizirian Decl. ¶ 36.

As such, based on the Court's prior rulings in this litigation, Plaintiff does not believe that the Court will use its discretion to impose significant penalties on Tapestry, assuming Plaintiff prevails at trial.  Plaintiff believes that, based on its prior rulings, the

Court is likely to find this case to be a relatively close call, particularly as the key decision of *Frlekin v. Apple*, 8 Cal. 5th 1038 (2020) only came down last year, i.e., years after Plaintiff's employment with Tapestry had ended and this suit initiated. Thus, Plaintiff estimates that, assuming Plaintiff is able to show at trial that the Class is owed approximately $50,000 in aggregate unpaid wages, the Court would likely assess a PAGA penalty somewhere in the range of 50% to 200% of the underlying unpaid wages awarded. In such a circumstance, the PAGA penalties would range between about $25,000 and $100,000, and Plaintiff believes this is a reasonable range of the likely PAGA penalties the Court would award as damages if Plaintiff prevailed at trial on the Class's underlying claims. Kizirian Decl. ¶ 37.

All in all then, if the Class's underlying wage claims are valued at about $47,301, the Class's Labor Code Section 1194.2 penalties at approximately the same $47,301, and PAGA penalties at up to $100,000, Plaintiff believes that realistically, the high end of damages for the Class at trial comes out to approximately $200,000. Kizirian Decl. ¶ 38.

Notably, while the settlement allocates only $10,000 to the PAGA claim, this is permissible because, when "evaluating the adequacy of a settlement of a PAGA claim, courts may employ a sliding scale, taking into account the value of the settlement as a whole…Thus, where a settlement for a Rule 23 class is robust, the statutory purposes of PAGA may be fulfilled even with a relatively small award on the PAGA claim itself, because such 'a settlement not only vindicates the rights of the class members as employees, but may have a deterrent effect upon the defendant employer and other employers, an objective of PAGA.'" *Viceral v. Mistras Grp., Inc.*, 2016 WL 5907869 at *9 (N.D. Cal. Oct. 11, 2016), *citing O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1134 (N.D. Cal. 2016).

In any event, what dwarfs the aggregate figure of approximately $200,000 in underlying damages for Class Members is the fact Plaintiff's Counsel would be entitled to reimbursement of their fees and costs if they are successful on the underlying wage

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:18-cv-06453-WHA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

claims, pursuant to California law.  *See Drumm v. Morningstar, Inc.*, 695 F. Supp. 2d
1014, 1018 (N.D. Cal. 2010) ("The awarding of attorney's fees is "mandatory" in
unpaid wage claims."); *In re Larry's Apartment, L.L.C.*, 249 F.3d 832, 838 (9th Cir.
2001) ("When it comes to attorneys' fees, we have declared that "[a] federal court
sitting in diversity applies state law in deciding whether to allow attorney's fees when
those fees are connected to the substance of the case.") (citations omitted).

Moreover, not only would Plaintiff's Counsel be entitled to their aggregate
attorneys' fees, but they would also be entitled to a multiplier under substantive
California law.  Counsel are entitled to a "risk multiplier … when (1) attorneys take a
case with the expectation that they will receive a risk enhancement if they prevail, (2)
their hourly rate does not reflect that risk, and (3) there is evidence that the case was
risky." *Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1008 (9th Cir.
2002).

Here, the Court is likely to award a substantial enhancement should Plaintiff and
the Class prevail at trial given the risky nature of pursuing the instant security check
claim on a class basis.  Indeed, until the California Supreme Court definitively ruled two
years after this litigation started in *Frlekin v. Apple*, 8 Cal. 5th 1038 (2020), that time
spent waiting and undergoing a security check was compensable time under California
law, Plaintiff and the Class could have easily lost on the merits.  The fact that the
*Frlekin* litigation began before this particular Court with a grant of summary judgment
on a class basis in favor of the employer only highlights Plaintiff's Counsel's
entitlement to a multiplier under substantive California law should Plaintiff have gone
through trial and prevailed on a Class basis.

If this matter were taken through trial, Plaintiff believes Counsel's fees would
easily be well in excess of $500,000.  With even a relatively modest multiplier of 1.5
applied, Plaintiff believes that Defendant would be liable to the Class for over
$1,000,000 in attorneys' fees for the totality of this litigation.  Thus, given the
mandatory award of Plaintiff believes that Defendant's plausible maximum exposure is

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

likely in the range of approximately $850,000 to $950,000.  Kizirian Decl. ¶ 39.

Thus, the Gross Settlement Amount of $342,500 would likely represent about 36% to 40% of the maximum recovery Plaintiff could expect if they pursued this matter through trial and fundamentally prevailed in all aspects of his and the Class's case. Notably, if the fee award is disregarded for this calculation, the $342,500 Gross Settlement Amount eclipses the approximately $200,000 maximum amount that is owed to the Class based upon Plaintiff's calculation of the Class's damages, as set forth above. Kizirian Decl. ¶ 40.

However, when accounting for the attorneys' fees and costs the Court is likely to award to Plaintiff's Counsel from the Gross Settlement Amount, Plaintiff believes that this settlement leaves the Class with effectively the full value of their claims, should the Class have taken this matter to trial and prevailed.  Thus, this settlement represents an excellent result for the Class.  Kizirian Decl. ¶ 41.

### 4. Plaintiff's Request for Attorneys' Fees and Costs Will Be Made During the Settlement Notice Period.

As noted above, the Settlement Agreement does not fix the amount of attorneys' fees and costs that Plaintiff will seek reimbursement on for the work of his counsel in prosecuting this matter.  Instead, Plaintiff will seek reimbursement of such costs from the Gross Settlement Amount.

Plaintiff will move for an award of attorneys' fees and reimbursement of Class Counsel's during the settlement notice period, with a motion hearing set concurrently with the final approval hearing.

### 5. Plaintiff's Individual Settlement with Defendant is Reasonable.

Plaintiff and Defendant have entered into an Individual Settlement Agreement which will provide Defendant with a comprehensive release of Plaintiff's claims, above and beyond what is being released as part of the Class Action Settlement.

This Individual Settlement Agreement, which is in the amount of $7,500 is reasonable because Defendant would not otherwise be entitled to receive a general

release from Plaintiff simply by virtue of the settlement of this class action suit. Moreover, the amount is reasonable because, as explained above, the class action settlement effectively already fully compensates Class Members for the entirety of their unpaid wages claim, as estimated based upon a complete Plaintiff victory at trial.

The Individual Settlement Agreement entered into here is also justified by the level of participation of the Plaintiff and the personal sacrifices he made.  Plaintiff was invaluable in assisting his counsel's prosecution of the case.  Plaintiff held a number of discussions with his counsel where he explained Defendant's security check practices, among other things.  Plaintiff also cooperated with discovery, spent a significant amount of time preparing for and attending his deposition, and in attending the settlement conference with Judge Spero.  In fact, Plaintiff took days off from work in order to attend his deposition and the settlement conference, commitments that the average Class Member did not need to engage in because of the work Mr. Ornelas put in on their behalf.  Kizirian Decl. ¶ 42.

For these reasons, and because Plaintiff is providing Tapestry with a broad general release that other class members are not, the Individual Settlement Agreement is appropriate and should be considered part of the broader settlement between the Parties.

### 6.  The Amount Allocated for Settlement Administration is Reasonable.

Plaintiff proposes appointing Simpluris Class Action Settlement Administrators ("Simpluris") as the Settlement Administrator in this case.  Class Counsel have significant experience with Simpluris, having worked with them numerous times over the years.  Class Counsel believe Simpluris are competent and highly capable based on their work on other matters.  Moreover, Simpluris previously handled the *Belaire-West* privacy notice mailing for the Parties earlier in this litigation and did so without any issue.  Kizirian Decl. ¶ 43.

The Settlement Administration Costs will be paid from the Gross Settlement Amount and will not exceed $20,000.00 absent court approval.  Therefore, the Settlement Administration Costs here are reasonable as compared to the value of the

settlement.

## V.    THE PROPOSED CLASS NOTICE IS APPROPRIATE

The Parties' notice plan comports with the requirements of Rule 23(e)(1) and entails mailing the notice to all known and reasonably ascertainable Settlement Class Members based on records maintained by Defendant.  Defendant has agreed to provide the addresses for all settlement Class Members to the Settlement Administrator.  To the extent any of the addresses are no longer current, a "skip trace" will be conducted to locate the particular Class Member.

As set forth by the Ninth Circuit, class action "[s]ettlement notices are supposed to present information about a proposed settlement neutrally, simply, and understandably".  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009).  The proposed Notice here fulfills these criteria.  It provides information on the meaning and nature of the proposed Settlement Class; the terms and provisions of the Settlement; the relief the Settlement will provide Settlement Class Members; how Class Members will receive their portion of the settlement proceeds; the application by Plaintiff's Counsel for reimbursement of costs and attorneys' fees; the date, time and place of the final Settlement approval hearing; and the procedure and deadlines for opting out of the Settlement or for submitting comments and objections.

The Notice also fulfills the requirement of neutrality in class notices.  It summarizes the proceedings to date, and the terms and conditions of the settlement in an informative and coherent manner in compliance with the Manual for Complex Litigation's statement that "the notice should be accurate, objective, and understandable to class members."  *See* Manual for Complex Litigation, Third (Fed. Judicial Center 1995) ("Complex Manual"), § 30.211.  The Notice clearly states that the Settlement does not constitute an admission of liability by Defendant, and recognizes that the Court has not ruled on the merits of the action.  It also states that the final settlement approval decision has yet to be made.  Accordingly, the Notice complies with the standards of fairness, completeness, and neutrality required of a settlement class notice disseminated

under authority of the Court.  *See* Rule 23(c)(2); 23(e); Complex Manual §§ 30.211, 30.212.

## VI.    CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that the Court grant preliminary approval of the proposed class action settlement.

Dated:  November 10, 2021          **BOYAMIAN LAW, INC.**
                                   **LAW OFFICES OF THOMAS W. FALVEY**


                                   By:  _____/s/ Armand R. Kizirian_____
                                            Armand R. Kizirian
                                   Attorneys for Plaintiff John Ornelas,
                                   Individually and on Behalf of the Certified
                                   Class