UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOHN ORNELAS,

    Plaintiff,

v.

TAPESTRY, INC.,

    Defendant.

No. C 18-06453 WHA

**ORDER RE MOTION FOR FINAL SETTLEMENT APPROVAL AND MOTION FOR ATTORNEY'S FEES**

## INTRODUCTION

In this wage-and-hour action, the parties move for final approval of their class settlement and class counsel move for attorney's fees and costs. To the extent stated below, the motions are **GRANTED**.

## STATEMENT

Prior orders detailed our facts (Dkt. Nos. 65, 72). In brief, plaintiff worked as a sales associate at defendant's retail store, which required its employees to undergo a security check prior to leaving the store. Plaintiff alleged that defendant did not pay him for time spent undergoing the security checks and that the security checks interfered with meal and rest breaks. A previous order granted defendant's motion for partial summary judgment as to the meal and rest breaks, leaving only plaintiff's claims for unpaid wages and overtime (Dkt. No. 65). A subsequent order then certified the wage and overtime claims for class treatment (Dkt. No. 72).

Specifically, the only issues certified for class treatment were the class's "claims for unpaid minimum wages and overtime incurred as a result of defendant's security check policy" (*ibid.*).

The parties reached a class action settlement agreement in November 2021 that would create a $342,500 fund to compensate the class (Dkt. No. 79). Since preliminary approval, notice of the settlement has reached 188 of 190 class members (Dkt. 87-3, ¶ 9).

The parties now move for final approval of the settlement and class counsel moves for fees and costs to be paid out of the common fund. There were no opt-outs or objections to the settlement or the requested attorney's fees and costs. This order follows a full fairness hearing.

## ANALYSIS

"The class action device, while capable of the fair and efficient adjudication of a large number of claims, is also susceptible to abuse and carries with it certain inherent structural risks." *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 623 (9th Cir. 1982). A settlement purporting to bind absent class members must be fair, reasonable, and adequate. *See* FRCP 23(e). Rule 23(e)(2) requires district courts to employ a two-step process. *First*, the parties must show the district court will likely be able to approve the proposed settlement. *Second*, the district court must hold a hearing to make a final determination of whether the settlement is fair, reasonable, and adequate. We have arrived at step two.

Our court of appeals recently explained that the final fairness assessment must analyze the eight *Churchill* factors: (1) the strength of the plaintiff's case; (2) the suit's risk, expense, complexity, and the likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant (if any); and (8) the reaction of the class members to the proposed settlement. *Kim v. Allison*, 8 F.4th 1170, 1178–79 (9th Cir. 2021) (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)); *Churchill Vill. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004). Additionally, Rule 23(e)(2) requires the district court to consider an overlapping set of factors, including the adequacy of the notice procedure, "the terms of any proposed award of attorney's fees," the existence of any evidence of collusion or

conflicts of interest, and any other relevant factors, before deeming the settlement fair. *Kim*, 8 F.4th at 1179; *Briseño v. Henderson*, 998 F.3d 1014, 1023–26 (9th Cir. 2021). Among the other relevant factors that will be considered are those listed by this Court in its notice regarding factors to be evaluated for any proposed class settlement, filed herein on November 7, 2018 (Dkt. No. 14).

In short, in consideration for the dismissal of this action with prejudice and a release of all claims incurred as a result of the security check, the settlement creates a $342,500 fund to compensate the class. The common fund will be distributed on a pro-rata basis based upon the number of weeks worked by each class member. On average, each class member will receive a settlement payment of approximately $1,227.50.

1. **THE CHURCHILL FACTORS.**

This order first turns to the eight *Churchill* factors.

*First* and *second*, the strength of plaintiff's case and the risk, expense, and complexity of the case supports settlement. While in a wholly separate case the California Supreme Court recently held that employees must be compensated for time spent undergoing security checks, *Frlekin v. Apple*, 8 Cal. 5th 1038 (2020), plaintiff still faced some risk. Defendant provided several individual employee declarations suggesting that the security check policy was not uniformly administered. Some employees went through the security checks on-the-clock, some did not go through the security checks at all, and some managers at some store locations did not require the checks. Even when the checks were done, the amount of time spent undergoing them varied. Thus, assessing damages in this case would require litigating the issue of who actually stood in line and for how long. Moreover, defendant has argued that, because some employees only went through the security checks irregularly or very briefly, a *de minimis* rule, which generally holds that employees cannot recover for otherwise compensable time if it is *de minimis*, would preclude recovery for some portion of the class. *See Troester v. Starbucks Corp.*, 5 Cal. 5th 829, 848 (2018) (leaving "open whether there are wage claims involving employee activities that are so irregular or brief in duration that employers may not be reasonably required to compensate employees for the time spent on them"). Plaintiff would

have had to litigate that issue. Thus, while plaintiff's case is strong in theory in light of the *Frlekin* decision, plaintiff nonetheless faced risks at trial as to the scope and regularity of defendant's security check practices.

*Third*, the risk of maintaining class action status throughout the trial is a neutral factor. An August 2021 order certified a Rule 23 class (Dkt. No. 72). However, for the reasons stated above, the damages phase of the trial could still present individualized issues of proof that might complicate a class-wide verdict.

*Fourth*, the total settlement amount modestly favors settlement. The settlement provides for a non-reversionary class settlement amount of $342,500. Taking into account attorney's fees, costs, and other overhead, $307,693.69 is allocated to the class, which averages out to approximately $1,227.50 per each of the 188 class members. The settlement represents about forty percent of what plaintiff asserts is defendant's total exposure (Kizirian Decl. ¶ 39). In absolute terms, this is a low-end settlement. Moreover, the settlement does not provide for any non-monetary relief addressing employees' time spent undergoing security checks. However, given the uncertainty about prospective damages and *Frlekin*'s unambiguous holding that such time is compensable, the monetary relief qualifies as adequate.

*Fifth*, the stage of the proceedings somewhat supports settlement. The parties engaged in some discovery. Plaintiff served written discovery and took one Rule 30(b)(6) deposition of defendant's corporate representative. Plaintiff also conducted outreach to class members seeking information about defendant's security check policies, its policies and practices recording hours worked, the process by which overtime hours were approved, and practices concerning meal and rest breaks (Dkt. No. 92). The extent to which counsel actually interviewed anyone as opposed to mere "outreach" is not stated under oath. Defendant was granted summary judgment as to several claims (Dkt. No. 65). A class was certified. In short, this settlement occurred after some effort and victories on both sides. The parties also had the benefit of engaging in settlement discussions supervised by Judge Joseph Spero.

*Sixth*, the abilities and views of counsel modestly support settlement. As discussed further below, class counsel failed to adequately protect the class from an expansive proposed release,

4

an issue that is now corrected but had to be addressed by a prior order (Dkt. Nos. 90, 91). However, class counsel otherwise have significant experience settling employment class actions, including settlements larger than this one (Dkt. No. 87). Both sides have spent resources and time litigating this case, including litigating class certification and defendant's motion for partial summary judgment. These points suggest both sides have approached settlement negotiations with adequate experience.

*Seventh*, no government entity participated in this action. This factor is neutral.

*Eighth*, the reaction of the class members to the settlement is positive enough. With nearly one-hundred percent participation, no class member opted out or objected to the settlement agreement. This factor supports settlement.

In sum, the settlement agreement qualifies as adequate under the *Churchill* factors.

### 2. RULE 23 AND THIS COURT'S SETTLEMENT FACTORS.

Consideration of the *Churchill* factors alone is not enough. *Kim*, 8 F.4th at 1179. This order accordingly evaluates whether the settlement is likely to be fair, reasonable, and adequate under Rule 23(e)(2), as well as this Court's notice regarding factors to be evaluated for any proposed class settlement (Dkt. No. 14), to the extent not considered in the *Churchill* analysis above.

*First*, recovery of forty percent of defendant's total exposure represents an adequate cost-benefit analysis for absent class members given the slight risks of litigation discussed above.

*Second*, while a previously proposed version of the settlement included a release that was improperly overbroad, that issue has been corrected (Dkt. Nos. 90–91, 93–94). The release of claims is now unambiguously limited to the claims certified for class treatment. The settlement releases "all claims for unpaid minimum wages and overtime incurred as a result of Defendant's practices regarding package inspections" and then goes on to list specific claims by name (*ibid.*). After preliminary approval, class counsel provided notice to all class members of a broader release that purported to release defendant of *all* claims for unpaid minimum wages and overtime (Dkt. No. 87-3). No class member opted out or objected to this broader concept of release. There is no reason to believe that any class member would object to a narrower release

5

preserving individual wage and overtime claims unrelated to the security check policy. Thus, the operative release ranks as adequate.

Plaintiff submitted a declaration stating that the 190 class members were mailed notice of the settlement (Dkt. No. 87-3). "The class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." *Officers for Justice*, 688 F.2d at 624 (citation omitted). Seventeen notices were returned by the Post Office as undeliverable. The claims administrator, Simpluris, then performed a skip-trace to locate better addresses for these seventeen members. Simpluris used this information to re-mail the seventeen notice packets. Two members remained outstanding. These two members who were never given notice of the settlement will not be released and will be excluded from the class. Because class counsel have gone to the appropriate lengths to locate and notify all class members, the release ranks as sufficient.

*Third*, the plan of allocation is fair and reasonable, and the class members are treated equitably. After expenses, attorney's fees, administrative costs, and PAGA penalties to the LWDA are paid out, the final settlement will deliver approximately $230,770 to 188 individuals. The average payout will be approximately $1,227.50. Each class member will receive a pro-rata share of the settlement based on the number of weeks each class member worked during the class period. There is no reversion provision. The notice was in plain English. Settlement checks not cashed within 120 days will be voided and the remaining funds disbursed by the claims administrator to the California State Controller's Office in the name of the class member (Settlement Agreement ¶ 44).

Moreover, there is no incentive award. While plaintiff settled his individual claims for $7,500 — an amount substantially higher than the amount that will be received by other class members — plaintiff's individual settlement includes the release of claims beyond those certified for class treatment, including claims involving rest and meal break violations. A prior order granted summary judgment to defendant on those additional claims vis-à-vis the individual plaintiff. Because plaintiff's individual settlement includes a release of plaintiff's

right to appeal that order, plaintiff's individual settlement does not the implicate the type of incentive payment that warrants close scrutiny.

*Fourth*, attorney's fees are discussed below, but the proposed award and timing of payment are appropriate. Attorney's fees were properly left to the Court.

*Fifth*, any previously held concerns about collusion or conflicts of interest with respect to the proposed expansive release were dealt with in prior orders. As explained, the parties actively litigated this case, settled after engaging in a settlement conference before Judge Spero, and corrected the release issue. Additionally, class counsel did not identify any agreement pursuant to Rule 23(e)(3).

*Sixth*, a portion of the settlement amount, $10,000, will be allocated to the resolution of PAGA claims. Seventy-five percent of that amount ($7,500) will be paid directly to the LWDA, and the remaining twenty-five percent ($2,500) will remain for participating class members (Settlement Agreement ¶ 25). This is a minimal but acceptable amount to satisfy the LWDA's interest in enforcing California's labor laws.

*Seventh*, there is no issue with any expansion of the class, nor a dwindling or minimal assets problem.

In sum, having considered the applicable factors, this order finds the proposed class settlement is sufficiently fair, reasonable, and adequate to support final approval. The Court shall retain jurisdiction to enforce the terms of the settlement. The Court emphasizes that the settlement is to go forward only with the newly proposed more limited release. Accordingly, and to the extent stated, final approval of the proposed class settlement and plan of allocation is **GRANTED**.

3.   **MOTION FOR ATTORNEY'S FEES AND COSTS.**

   A.   *FEES.*

Class counsel request $119,875 in attorney's fees, or thirty-five percent of the total common fund. For the reasons that follow, this order will award $76,923.42 in attorney's fees, or twenty-five percent of the total fund after the deduction of costs and expenses.

"Because the relationship between class counsel and class members turns adversarial at the fee-setting stage, district courts assume a fiduciary role that requires close scrutiny of class counsel's requests for fees and expenses from the common fund." *In re Optical Disk Drive Prods. Antitrust Litig.*, 959 F.3d 922, 930 (9th Cir. 2020). A district court must ensure that attorney's fees are "fair, adequate, and reasonable." *Staton v. Boeing Co.*, 327 F.3d 938, 963–64 (9th Cir. 2003). "In 'common-fund' cases where the settlement or award creates a large fund for distribution to the class, the district court has discretion to use either a percentage or lodestar method." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). This order finds the percentage method appropriate given the nature of the settlement. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011).

Our court of appeals has recognized twenty-five percent of the common fund as a benchmark award for attorney's fees. *Ibid.* A departure from our circuit's benchmark merits a closer look at all the circumstances of the case, which can include: (1) the results achieved; (2) the risks of litigation; (3) whether there are benefits to the class beyond the immediate generation of a cash fund; (4) whether the requested percentage rate is above or below the market rate; (5) the contingent nature of the representation and the opportunity cost of bringing the suit; (6) a lodestar cross-check; and (7) reactions from the class. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–52 (9th Cir. 2002).

Counsel seek $119,875, with eighty percent of the total fee award going to Boyamian Law, Inc., and the remaining twenty percent to the Law Offices of Thomas W. Falvey (Dkt. No. 85). This order proceeds through the *Vizcaino* factors.

The results achieved, risks of litigation, and non-monetary benefits to the class do not warrant a departure from the benchmark. This settlement nets just $1,227.50 per class member. The settlement does not provide any non-monetary benefit to the class. Moreover, while plaintiff faced some risk at trial as to the scope of damages, the *Frlekin* decision obviated much of the risk in this litigation by establishing that California employees are entitled to compensation for time spent waiting for security checks. 8 Cal. 5th 1038. Plaintiff's counsel owes much of their success to that timely decision, which plaintiff's counsel had nothing to do

1  with. Thus, the *first*, *second*, and *third* factors all support a downward departure from the
2  requested fee award.
3      As to the *fourth* factor, counsel's request for a ten-percent upward swing from the
4  benchmark is outlandish, particularly in light of counsel's apparent willingness to glide over the
5  release the class's rights, as described below.
6      *Fifth*, this order recognizes that class counsel took on the risk of litigating this case on a
7  contingency basis. They deserve credit for bringing suit prior to the *Frlekin* decision, when the
8  relevant law was unsettled.
9      *Sixth*, the lodestar cross-check supports awarding the benchmark. The alleged lodestar for
10 class counsel amounted to $291,165 (Br. 2). The hourly billing rates include $300 per hour for
11 Heather Zermeno, $525 per hour for Armand Kizirian, $700 per hour for Michael Boyamian,
12 and $950 per hour for Thomas Falvey (Kizirian Decl. ¶ 34). Class counsel expended a total of
13 469 hours of work on the case (Boyamian Decl. ¶¶ 8-15; Kizirian Decl. ¶¶ 33, 37-40; Falvey
14 Decl. ¶¶ 6–10). Some of these hours were spent litigating plaintiff's individual claims, many of
15 which were lost to defendant's motion for partial summary judgment (Dkt. No. 72). Those
16 hours, which were not carved out, offered no benefit to the class. With that important caveat,
17 both class counsel's hourly rates and the hours expended qualify as fair and reasonable, market-
18 based, and comparable to other recent approvals in this district. The award granted herein of
19 $76,923.42 in attorney's fees equates to a multiplier of 0.26. A low multiplier is reasonable
20 here considering that some of the hours were spent on plaintiff's individual claims, a number of
21 plaintiff's claims did not survive defendant's motion for partial summary judgment, and the
22 settlement is small. The percentage method is more appropriate given that plaintiff has
23 achieved only "limited success." *In re Bluetooth*, 654 F.3d at 942.
24     *Seventh*, the requested fee of thirty-five percent of the settlement received no objections
25 from class members, who received notice of the proposed award with their notice of settlement
26 and opportunity to opt out (Dkt. No. 87).
27     *Finally*, plaintiff's counsel made a major mistake. In violation of their fiduciary duty to
28 the class, counsel agreed to an expansive release that placed the class in danger of releasing *all*

9

individual wage and overtime claims, including wage and overtime claims not certified for class treatment.

A prior order, filed the same day this case was assigned to the undersigned judge, made clear that any "proposed release should be limited only to the claims certified for class treatment" (Dkt. No. 14). An August 2021 order certified the class's "claims for unpaid minimum wages and overtime *incurred as a result of defendant's security check policy*" (Dkt. No. 72 (emphasis added)). The first approved notice of class certification tracked this language, stating that "[t]he Court has certified the class with respect to claims for unpaid minimum wages and overtime incurred as a result of Defendant's security check policy" (Dkt. No. 74). This shows that counsel fully understood the limited scope of the certified claims. Then, at the November 2021 hearing for preliminary approval of this settlement, the Court directly asked class counsel: "Is the release limited to claims that were certified for class treatment?" (Dkt. No. 82). Counsel immediately responded: "Yes, yes. . . . The release is limited to just certified claims" (*ibid.*). The Court granted preliminary approval based on this representation.

While reviewing the instant motion, however, the Court discovered that class counsel had agreed to a much broader release, which stated as follows:

> Plaintiff and ***all Participating Class Members*** (including any assigned agents/representatives) shall, for the Released Claims Period, fully and finally waive, release, and forever discharge the Released Parties from ***any and all claims for unpaid minimum wages and overtime, including those*** concerning Defendant's practices regarding package inspections ("Released Claims").

(Dkt. No. 87-2, Exh. 1, ¶ 21 (emphasis added)). Plainly, the release was *not* limited to just certified claims.

When the Court brought counsel's attention to the issue, both parties acknowledged that the release was unduly broad, apologized, and proposed a release properly limited to certified claims (Dkt. Nos. 90–91). Specifically, the parties admitted that the proposed "release language . . . indicates that wage claims other than those stemming from the security check policy may be effected" (Dkt. No. 91). They then "apologize[d] for using this overbroad language" (*ibid.*).

10

At oral argument, however, class counsel was not so apologetic. Counsel suggested that the broad release was inadvertent and was thought to be appropriate because a prior order granted defendant's motion for partial summary judgment as to plaintiff's rest and meal break claims. That is ridiculous. The Court granted defendant's motion as to *plaintiff's* individual claims before any class was ever certified (Dkt. No. 65). That order had no effect on the class, and certainly did not offer class counsel a blank check to bargain away the individual rights of class members.

Counsel further contended that the release was not so problematic because "there is no statute" that forbids the release of claims beyond those certified for class treatment. Counsel ignored that the release they proposed *violated this Court's order*. Counsel also ignored that preliminary approval would not have been granted *but for counsel's misrepresentation about the release*.

This order acknowledges that there are times when a class settlement may release more than the certified claims, but in such circumstances class counsel must conduct sufficient discovery and investigation into the merits of those claims to be able to place a reasonable dollar value on them. Here, for example, there may well be overtime claims by class members having nothing to do with the security checks. Before those are wiped away by class counsel, the strength of those claims must be investigated as to all class members. Class counsel's vague representations about the "substantial outreach" they conducted are insufficient to alleviate this concern (Dkt. No. 92).

For that reason among others, this was a serious problem. While class actions are an engine of justice in our federal courts, they can also lend themselves to abuse. A district court accordingly may not simply rubber stamp stipulated settlements. We must be careful to make sure absent class members are treated fairly. *Staton v. Boeing Co.*, 327 F.3d 938, 959–60 (9th Cir. 2003) (class settlements must be assessed for "actual fraud, overreaching or collusion"). Recognizing this concern, the Court of Appeals for the Third Circuit has described the potential for class action lawsuits to be "a vehicle for collusive settlements that primarily serve the interests of defendants — by granting expansive protection from lawsuits — and of plaintiffs'

11

1  counsel — by generating large fees gladly paid by defendants as a quid pro quo for finally

2  disposing of many troublesome claims." *In re General Motors Corp. Pick-Up Truck Fuel Tank

3  *Prod.'s Liab. Litig.*, 55 F.3d 768, 778 (3d Cir. 1995).  Thus, we are particularly wary of

4  settlement agreements that provide for an expansive release of claims beyond those certified for

5  class treatment.

6  While the issue has been corrected, it was class counsel's job to protect the class.  They

7  did not do so.  Class counsel neglected their fiduciary duty to the class.  Thanks only to an alert

8  law clerk for the judge, the abuse was spotted.  Counsel and the parties are **ORDERED** to never

9  represent that the release extends to wage and overtime claims beyond those incurred as a result

10  of the security check.

11  In sum, this was a low-end settlement.  Class counsel nearly forfeited the class's rights to

12  bring claims outside those certified for class treatment.  Counsel do not deserve more than the

13  benchmark in light of their grievous error, let alone the steep ten-percent departure they seek.

14  This order would have awarded less than the benchmark if not for the fact that counsel's

15  claimed lodestar is much higher.  Consequently, this order **AWARDS $76,923.42** in attorney's

16  fees, to be distributed to each firm in the same proportions as their requested fees.  This equates

17  to twenty-five percent of the common fund after deduction of costs and expenses, or 22.46

18  percent of the total common fund.

### B. COSTS.

20  Counsel asserted in their briefing that they incurred a total of $7,054.36 in unreimbursed

21  costs (Boyamian Decl. ¶ 16, Exh. 3; Falvey Decl. ¶ 11; Kizirian Decl. ¶ 36).  At the motion

22  hearing, counsel requested additional reimbursement for travel expenses, which increased the

23  requested total to $7,306.31.  Counsel have provided specifics as to all the costs, the largest of

24  which are for deposition transcription services ($2,839.28 and $1,038.05).  The costs seem

25  reasonable.  Thus, the request for **$7,306.31** in costs is **APPROVED**.

### CONCLUSION

27  To the extent stated, final approval of the class's settlement agreement with defendant is

28  **GRANTED** and the settlement agreement shall be consummated in accordance with its terms.  In

particular, the settlement is to only go forward with the more limited release, as proposed in the parties' supplemental briefing (Dkt. Nos. 90–91, 93–94). Counsel and the parties are **ORDERED** to never represent that the release extends to wage and overtime claims beyond those incurred as a result of the security check.

All of the class's certified claims against defendant are hereby dismissed with prejudice as provided in the settlement agreement. The class's request that this order find the notice of settlement adequate and in satisfaction of due process is **GRANTED**. The Court shall retain exclusive jurisdiction over the settlement agreement as described therein, including the administration and consummation of the settlement. The class's further request for final approval of the plan of allocation for the settlement is **GRANTED**. The class's further request for authorization for class counsel and Simpluris to begin administration and distribution of the proceeds of the settlement in accordance with the plan of allocation is **GRANTED**.

This order further **AWARDS** attorney's fees in the amount of **$76,923.42.** Defendant shall wire transfer fifty percent of the total $76,923.42 as of the effective date as defined in the settlement, divided proportionately among the two law firms as requested in counsel's original request for fees. The remaining fifty percent shall be paid when defendants certify that all funds have been properly distributed and the file can be completely closed**.**

This order further **AWARDS** class counsel costs in the amount of **$7,306.31**. This amount shall be paid promptly from the settlement fund. Further costs and expenses under **$20,000** that may be incurred in connection with the settlement administration process may be disbursed from the settlement fund without further application to the Court.

**IT IS SO ORDERED.**

Dated: April 29, 2022.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

13